## GOODWIN & *a. v.* MILTON.

When there is a vacancy in the board of road commissioners, which can legally be filled in vacation by a judge of the court of common pleas, it is not necessary for the party applying to have the vacancy filled, to give notice of the application. The appointment may be made without notice.

If a person appointed to fill a vacancy in the board of road commissioners takes the oath of office, but not the oath of allegiance, it is too late to take an exception on that account after the coming in of the report, if it shall appear that the party excepting knew, before the hearing, that the oath of allegiance had not been taken, or if there were sufficient facts before him to put him on inquiry. Such an exception should be taken before the hearing commences, or it will be considered as waived.

It is not necessary for road commissioners to state in their report that they have certified to the town clerks the damages awarded to the land-owners. The fact that they have so certified may be proved by evidence *aliunde*. And the petitioners for a road will not be required to show that such damages have been so certified, till after *prima facie* evidence has been furnished showing that no certificate has been made.

The report of road commissioners will not be set aside because a party lays before them illegal evidence, but directly withdraws it, if it satisfactorily appears to the court that the commissioners gave it no consideration. And the affidavits of the commissioners may be received to show that they did not consider it.

Where land belonging to an insolvent estate is taken for a highway, an award of damages is properly made to the administrator of the estate, and not to the heirs.

PETITION for a highway in Milton. At the August term, 1851, of the common pleas, the petition was, by order of the court, referred to Simon F. Hayes, Samuel D. Whitehouse, and Jonathan Cartland, road commissioners for the

county. In vacation, after said term, Hayes being interest-ed in the petition, declined to act thereon as such commis-sioner; and on the 29th of September, 1851, the petitioners made application in writing to Hon. Hiram R. Roberts, one of the judges of said court for the county, setting forth that Hayes was interested in the petition, and had declined to act therein, and praying said Roberts to appoint some suit-able person to fill the vacancy in the board of commission-ers.

On the 1st of October, 1851, Roberts, by writing under his hand, appointed Walter Durgin to serve as road com-missioner upon said petition instead of said Hayes. No notice was given to the town of Milton of the application so made to Roberts, nor of the proceedings thereon, until the time of the hearing before the commissioners, as here-inafter mentioned, except that Durgin's name was signed to the notices of the hearing which were served on the town.

On the 2d day of October, 1851, Durgin took and sub-scribed the oath of office as such road commissioner, but he did not at that, or any subsequent time, take or subscribe the oath of allegiance to the State. Prior to the appoint-ment of Durgin as aforesaid, he had taken and subscribed the oath of allegiance, but the same was not filed in the office of the Secretary of State until the 28th of January, 1852, subsequent to the hearing before Durgin as one of the road commissioners, and the making of the report of the commissioners, as hereinafter mentioned; nor was there on file in the Secretary's office any certificate of the taking of the oath of allegiance by said Durgin until said 28th of January, 1852.

On the 22d of October, 1851, Durgin, Cartland and Whitehouse, agreeably to notice previously given, met the parties and commenced the hearing upon the petition, two of the selectmen, the agent and the attorney of Milton be-ing present. The petition and order of court thereon, the refusal of Hayes to act thereon, the application of the pe-

titioners to Roberts, the appointment by him of Durgin, and the certificate of the oath of office taken by Durgin, were all read and made known to said selectmen, agent and attorney of Milton; and thereupon the petitioners proceeded to show to the commissioners the route for the new highway prayed for, and various existing highways for which the new highway prayed for was alleged to be a substitute; and the commissioners, having made examination thereof, accompanied by said agent and attorney, they, the said agent and attorney, proposed to show to the commissioners, on the following day, other routes and highways; and thereupon the commissioners adjourned to meet again on the following day.

At the time and place of adjournment, the attorney for said town of Milton objected to a hearing before said Cartland and Whitehouse, road commissioners, and said Durgin, alleged to have been appointed a road commissioner on said petition, because no notice was given to the town of any application for the appointment of a person to act as such commissioner in place of said Hayes, or of the appointment of Durgin. The commissioners overruled the objection, and proceeded with the hearing of the parties.

At the close of the hearing, the attorney for the petitioners offered, as evidence to the commissioners, a proposition in writing, signed by David Furbish, to build the highway prayed for, in case it should be laid out, on certain terms therein specified, provided the proposition should be accepted and the contract closed within ten days; and also another proposition in writing, signed by two of the petitioners, to guarantee the fulfilment by Furbish of the contract on his part, if the terms proposed by him should be accepted within ten days. The attorney for the petitioners commenced reading said papers to the commissioners, and the attorney for the town objected thereto. After some discussion, the attorney for the petitioners said he would not offer the propositions as evidence to the commissioners, but would

read them for the benefit of the town, as they were to have a town meeting in a few days, and they were read by him in the presence and hearing of the commissioners. Immediately after reading them, the attorney for the petitioners stated to the commissioners that when he offered the papers as evidence to the commissioners, he thought they were competent evidence, but upon reflection, after the objection was made to their being read, he was satisfied they were not competent evidence, and the commissioners ought not to consider them as such.

No further evidence was offered after the reading of said papers, and the case was submitted to the commissioners without argument by the counsel on either side.

Upon the exceptions being filed to the report of the commissioners, as hereinafter mentioned, the petitioners submitted to the court the affidavits of the commissioners, in which it is declared that the commissioners did not regard the propositions as evidence before them, and did not give them any consideration in forming an opinion in the case.

At the January term of the common pleas, 1852, the commissioners made their report in favor of laying out a new highway, as prayed for in the petition. In their report they certify that said highway passes over land belonging to the estate of Jabez Dame, deceased, and that they award one dollar damages for said land taken for the highway, to the administrator of said estate, and no damages are awarded to the heirs of said estate. Evidence was offered to the court, showing that the estate of Jabez Dame, at the time of the hearing before the commissioners, was, and ever since has been, under administration, and has been decreed to be administered as an insolvent estate; and that Dame died, leaving three sons, his heirs at law, all of whom, during the whole time since the commencement of the proceedings upon this petition, have resided out of this State.

The land alleged to belong to said estate was a range-

way reserved by the original proprietors, and had never been cultivated, but was included in and made a part of the lot.

It was not stated in the report that the commissioners certified to the town clerk of said town of Milton the damages awarded to the owners of lands taken for said highway, fourteen days before the sitting of the court to which their report was returnable ; but evidence *aliunde* was offered to the court, showing that the commissioners did certify said damages to the town clerk more than fourteen days before the sitting of said court, and the same were so certified.

Upon motion made to the court by the petitioners for the acceptance of the report, the town filed and urged the following exceptions :

I. That said Walter Durgin was, by the Hon. Hiram R. Roberts, in vacation, appointed road commissioner to act on said petition on application of the petitioners, and no notice of the application, nor of the proceedings thereon, was given to the town.

II. That Durgin did not, before proceeding to execute the duties of the office of commissioner, make and subscribe the declaration of allegiance to the State of New Hampshire, as required by the constitution.

III. That the commissioners did not certify to the town clerk of said Milton, fourteen days before the sitting of the court, the damages awarded to the owners of the land over which the highway is laid out.

IV. That the petitioners, at the hearing, read to the commissioners, when objected to by the town, said propositions, signed by Furbish and by two of the petitioners.

V. That the commissioners did not award any damages to the heirs of Jabez Dame, deceased, over whose land the highway is laid out, but awarded damages to the administrator of the estate of said Jabez Dame.

The questions arising upon the acceptance of the report were reserved and assigned to this court for determination.

Goodwin v. Milton.

*Woodman*, with whom was *Christie*, for the petitioners.

I. To the first exception taken by the town, we say that the statute required no notice to them of the application to fill the vacancy in the board of road commissioners. Rev. Stat. ch. 996. But if this exception could be taken at all, we say it is one of that class which policy and the convenience of the administration of judicial business requires should be taken at a particular stage of the proceedings, and which will be considered as waived if not taken at that time. This exception was waived by the town's proceeding in the examination. Notices of the hearing, signed by Durgin as road commissioner, were served on the town clerk and selectmen of Milton fifteen days before the day of hearing. They knew that Durgin was not one of the regularly elected board of road commissioners, and that he was acting in place of one of those officers. They knew that he had been appointed without notice to them. The exception should have been taken when the parties met and the appointment of Durgin was read, in the presence of the officers and attorney of the town. The petitioners were at the expense of showing the route prayed for, and many other highways in the vicinity; and on the proposition of the town, they met the next day for the purpose of continuing the examination of highways and other routes, when, for the first time, the exception was taken to the mode of appointment of Durgin, no objection being taken to his qualifications. He had been one of a previous board of commissioners elected by the people.

It is not sufficient for the attorney of the town to say that he did not know the fact that no notice of such application had been given to the town. It was the fault of the town if he did not know it. And he knew it on the morning of the first day of hearing. The party, and not the attorney, is to be regarded. *State* v. *Hascall*, 6 N. H. Rep. 352; *Fox* v. *Haselton*, 10 Pick. 275; *Ipswich* v. *Commissioners of Essex*, 10 Pick. 519; *Rollins* v. *Ames*, 2 N.

H. Rep. 349; *Burnham* v. *Wood*, 8 N. H. Rep. 334; *Whicher* v. *Whicher*, 11 N. H. Rep. 348; *Walker* v. *Green*, 3 Me. Rep. 215.

The exception is like a plea to the jurisdiction, which must be taken before imparlance. Bac. Ab. Pleading 32.

II. To the second exception, we say that the statute does not require Durgin to take the oath of allegiance; it requires only the oath of office from public officers. The clause in the constitution is merely directory to public officers to take the oath of allegiance, leaving to the legislature to regulate the penalty for not taking it. The omission to take this oath does not vitiate their proceedings. Durgin is not such a public officer as is contemplated in the constitution; he is a special committee or agent of the court to inform them of certain matters in a particular case.

But we further say that this exception is waived; it was first taken after the report was made to the court. This is too late. Durgin had repeatedly taken the oath of allegiance, and was acting under the sanction of such oath as much as if he had again taken it on this petition. This was all that the interests of the State required. He literally complied with the requisitions of the 84th article of the constitution. The neglect of the magistrates before whom he had taken the oath, to make return thereof to the Secretary of State, ought not to render void all his proceedings. The oath was filed in season to justify the court in accepting this report.

III. The third exception is untrue. The commissioners did certify the damages *to the* town clerk, as required by law, and they so certified to the court, in a paper other than their report laying out the highway. This was the proper mode. The damages are not assessed until the report is signed and completed. The report necessarily precedes the certificate to the town clerk, and evidence *aliunde* is therefore the proper evidence to prove such fact.

IV. To the fourth exception, we say that no impropriety

was intended, no influence upon the commissioners was designed, and no injury was effected. The court of common pleas will not treat evidence introduced before commissioners the same as that before juries. The commissioners cannot and should not be liable to criticism for their manner of receiving testimony. If such course should be adopted, the court should accompany the commissioners, and rule at their sittings, as they do on jury trials.

V. The administrator of Jabez Dame's estate, the same having been rendered insolvent, was the owner of said real estate *pro hac vice*. He was trustee for the creditors and the heirs, and if the damages awarded should not be required for the creditors, he would hold it for the heirs. He was the tenant of the land, the heirs being out of the State, and was therefore the proper party to notify. If the damages had been awarded to the heirs, the administrator would have been deprived of a part of the funds legally in his hands for the purpose of paying the debts.

*Hobbs & Sanborn*, for the town.

I. There is no rule of law constituting the road commissioners a tribunal which is to receive evidence *ad libitum*. They are bound to observe the laws of the land in their proceedings, and a part of their oath of office is that they are to discharge their duties " agreeably to the constitution and the laws of the State of New Hampshire."

The road commissioners are a tribunal of inferior jurisdiction. The superior court of judicature has a general superintendence of the doings of commissioners, for the correction of their errors. Rev. Stat. ch. 171, § 4.

The admission of evidence by the commissioners is governed by the same rules that govern the admission of evidence to the jury. The commissioners are required to make, and the jury may in some cases make, personal examination. Rev. Stat. ch. 51 § 3; Rev. Stat. ch. 49 § 7; Rev. Stat. ch. 188 § 1.

The proposition of Furbish, and the guaranty by the petitioners, could not be admitted to the jury. It would operate as direct evidence of the expense of building the road. Such evidence would be inadmissible, except from experts, and the signers were not such. *Robertson* v. *Stark*, 15 N. H. Rep. 109; *Rochester* v. *Chester*, 3 N. H. Rep. 349; *Hoitt* v. *Moulton*, 1 Foster's Rep. 586; *Beard* v. *Kirk*, 11 N. H. Rep. 397; *Peterborough* v. *Jaffrey*, 6 N. H. Rep. 462. It was in fact, in its effect, a direct offer, made to induce the commissioners to lay out the highway without being directed by the principles by which alone they should be governed, as stated in the case of *Dudley* v. *Cilley*, 5 N. H. Rep. 558, and of *Dudley* v. *Butler*, 10 N. H. Rep. 281.

The affidavits of jurors, and consequently of the commissioners, cannot be received to show that material papers, improperly admitted, had no influence on their minds. *Page* v. *Wheeler*, 5 N. H. Rep. 91; *Whitney* v. *Whitman, Jr.*, 5 Mass. Rep. 405; *State* v. *Hascall*, 6 N. H. Rep. 362; *Bridge* v. *Eggleston*, 14 Mass. Rep. 245.

II. The rangeway on which the highway was laid out was the land of the heirs of Jabez Dame, subject to the reservation of the easement to the original proprietors, and no other persons could derive any benefit from the reservation. Shep. Touch. 80 d. 10 § 4. Jabez Dame died intestate, and the land descended to his three sons. The damages should have been assessed to the three sons. Rev. Stat. ch. 51 § 7; Rev. Stat. ch. 49 § 13. The administrator is entitled to receive the rents and profits, and nothing more. Rev. Stat. ch. 159 § 10. He had no interest in the real estate, not even as trustee. His only right to intermeddle with the real estate must be derived from a license from the judge of probate. *Nason* v. *Willard*, 2 Mass. Rep. 478.

III. It is submitted whether evidence *aliunde* could be received, to show that the commissioners seasonably certified to the town clerk the damages awarded.

IV. The constitution requires that Walter Durgin should,

before he proceeded to execute the duties of his office, make and subscribe the declaration of allegiance. N. H. constitution, art. 84. " Any person, having taken and subscribed the oath of allegiance, and the same being filed in the secretary's office, he shall not be obliged to take said oath again." N. H. Constitution, art. 84. The constitution expressly requires the oath to be made and subscribed by the officer accepting the trust, before he proceeds to execute the duties of his office. From this requirement he cannot be exempted, unless such oath be, before he proceeds to execute the duties of his office, filed in the secretary's office. The constitution is clear and explicit on this subject. The constitution says nothing of public officers taking the oath. It excepts town officers. The term " public officers," used in the statute, includes all officers except town officers. Rev. Stat. ch. 15 § 4.

The objection was not waived. The commissioners not being made judges of their own qualifications, the objection could not be taken till the report was returned to court. The neglect to make the objection cannot confer a qualification required by the constitution.

The magistrate was not required to return the declaration of allegiance. If Mr. Durgin wished to avoid the necessity of again taking the oath, he should have returned it. Neither can he be considered an officer de facto.

V. The duties of the road commissioners are mainly of a judicial character. If the statute of June 26, 1850, (N. H. Laws ch. 966,) authorizes a judge of the court in vacation to appoint a road commissioner without notice, a new principle is introduced into the jurisprudence of this State. Lancaster v. Pope & al. 1 Mass. Rep. 88 ; Isnard v. Cazeax, 1 Paige 39 ; Smart v. Hall, 4 Paige 551.

The exception was not waived by Milton. There was no imparlance, either general, special, or general-special. 1 Sell. N. P. 266 ; 1 Chit. Pl. 436. All the cases cited by the counsel for the petitioners would have been in point, had

not the exception been taken till the report was returned to court. They are not in point. The case finds that only two of the selectmen and agent were present. The exception was taken as soon as it could be ascertained that no notice had been served on the other selectman or town clerk, and comes strictly within the exceptions stated by Parker, J., in *State* v. *Hascall,* 6 N. H. Rep. 360. The reading of the application, appointment and oath, had no tendency to show that no notice had been given, it being wholly unnecessary to state the notice.

EASTMAN, J. The first exception taken to the acceptance of this report, was not raised till the second day of the hearing before the road commissioners. The notices for the hearing had been signed by Durgin, and served upon the town; the proceedings, by which he had been appointed as a substitute for Hayes, were read before the selectmen, the agent and their counsel, at the time of their assembling, on the first day; and that day was spent in the examination of the road prayed for, and other routes, and no exception was taken to the competency of Durgin or the regularity of his appointment. Under these circumstances, we might well inquire, were it necessary, whether the town had not waived the right to except to the want of notice upon the appointment of Durgin. *Parish* v. *Gilmanton,* 11 N. H. Rep. 293; *Stevens* v. *Goffstown,* 1 Foster's Rep. 454; *Gilford's petition,* 5 Foster's Rep. 124.

But we are not inclined to place the decision of this question upon the ground of waiver, since we think that no notice of the application to fill the vacancy was necessary. By the Revised Statutes, ch. 50 § 6, it is provided, that if any commissioner is interested in any such petition, (relating to roads,) he shall not serve, but the vacancy shall be filled by the other commissioners of the county. By the act of July 2, 1846, (Pamphlet Laws ch. 353,) this section of the Revised Statutes was repealed, except as to all petitions

and matters previously commenced, and the following section enacted instead of it, to wit: " That upon all petitions relating to roads, if any commissioner or commissioners are interested in any such petition, he or they shall not serve, but the vacancy or vacancies shall be filled by the court of common pleas in which such petition is pending."

By the act of June 26, 1850, (Pamphlet Laws ch. 996,) entitled " An act in addition to the 353d chapter of the laws of this State, approved July 2, 1846," it was enacted " that the vacancy or vacancies mentioned in the statute to which this is in addition, may be filled by any judge of the superior court, or by any judge of the court of common pleas in the county in which the proposed road is situate, in vacation, as well as by the court of common pleas in term time."

These are all the provisions upon the subject, and in them we find nothing indicating that any hearing is to be had upon the question of the appointment to be' made, or that any notice to the parties is required. By the Revised Statutes, the commissioners themselves were to fill the vacancy; by the act of 1846, the court were to do it, and by the act of 1850, a judge is empowered to perform the duty in vacation. It is now a judicial act, requiring no argument or suggestion from the parties, and their rights cannot be affected in any way, when the appointment is made, either by their presence or absence. Indeed, a suggestion by either party in favor of the appointment of any particular person would very likely lead to his rejection, unless agreed to by the other side. Our opinion then is, that no notice of the application for the appointment of Durgin was necessary, and that his appointment was regular and legal.

The second exception is more formidable, but we think, after giving it considerable consideration, that it must be regarded as waived.

Fourteen days before the hearing, the town knew that Durgin had been appointed to fill the vacancy, the notices that were served upon the town having been signed by him.

On the day of the hearing, the petition and order of the court thereon, the refusal of Hayes to act, the application of the petitioners to Judge Roberts for an appointment to fill the vacancy, the appointment of Durgin, and the certificate of his oath of office, were all read and made known to the town; and Durgin had in fact taken the oath of allegiance on a former occasion. Now we think that if the town ever intended to except to Durgin on the ground that he had not taken the oath of allegiance, it should have been done before the hearing commenced. They were then possessed of all the necessary information in regard to his appointment and qualifications; and the very fact that the oath of office was read over to them, would naturally suggest the inquiry as to the oath of allegiance.

The authorities are numerous, that where a party is aware of the existence of an exception and does not take it at the proper time, he thereby waives his right to take it at all. And although it cannot be strictly said in this case that the town actually knew that Durgin had not taken the oath, yet there was abundance to put them on inquiry, if they did not know it. If the inquiry had been made at the time the oath of office was read over, and the exception then taken, the petitioners would probably have seen to it that the objection was removed before incurring the expense of the hearing. It is possible that the town, seeing that it was an objection that might be cured, but supposing that it would be valid at any time, chose to reserve it till the coming in of the report.

No exception is taken to the personal fitness of the commissioner, and inasmuch as he had once taken the oath of allegiance, and its not being filed may have been the fault of those who administered the oath, and not his, we must regard this exception as technical, and in no way affecting the merits of the case.

The third exception raises the question whether it is necessary for the road commissioners to state in their report

that they have certified to the town clerks the damages awarded to the land owners; or whether the fact that they have so certified may, if the matter is disputed, be proved by evidence *aliunde*.

It will be perceived that this is an objection that could very readily be obviated by a re-commitment of the report; for if the damages had been certified, as required by the statute, the commissioners could easily amend the report by stating the fact. But we do not think that it is necessary that they should state in their report that they have certified the damages to the town clerks, although as a matter of practice, it is probably better that it should be done.

The statute is quite explicit in specifying what the report shall contain. It requires that the commissioners shall state in their report the names of the several owners of land taken for such road, and the manner in which they have been notified; that a particular description of the road laid out shall be inserted, and an estimate of the expense of making the same; and that the damages assessed to the several owners shall also be inserted, besides other matters. Rev. Stat. ch. 51, §§ 4, 5, 6, 7, and 9. And although it is provided that the commissioners shall certify the damages awarded to such owners, in each town, to the town clerks, yet there is no provision that they shall state such fact in the report. Nor do we discover any necessity for it, or any objection to showing by evidence *aliunde* that it has been done. The object is to give the towns correct information as to the matter, that the land owners may be settled with.

We think, further, that the necessity of showing that the damages have been certified to the town clerks, can only properly arise upon evidence being furnished by the objecting party, tending to show that no certificate has been filed. The petitioners are not called upon to show that a certificate has been filed with the town clerks, simply because the town takes the exception. Evidence must be furnished by the town

to make out a *prima facie* case, before the court will require the petitioners to answer the exception.

The fourth exception is, that the petitioners, at the hearing, read to the commissioners, when objected to by the town, certain propositions in regard to the making of the road.

We are not inclined to depart from the decisions heretofore made in this State, by which it has been held that highways should be laid out only when the public good requires it; and that if any other considerations induce the laying out, it will be illegal. *Dudley* v. *Cilley*, 5 N. H. Rep. 558; *Dudley* v. *Butler*, 10 N. H. Rep. 281; *Petition of Knowles*, 3 Foster's Rep. 193.

But on examining the facts upon which this exception is founded, we do not find that the case is brought within the principle of those decisions. Here was a proposition to make the road, in case it should be laid out. It was read in the presence of the commissioners, but it was subsequently stated to them, by the counsel who read it, that he was satisfied it was not competent evidence, and that they should not consider it as such. It appears, too, that the commissioners did not treat the proposition as evidence, and gave it no consideration in forming their opinion in regard to laying out the road.

It is not a very uncommon matter for evidence to be introduced to a jury, and subsequently to be withdrawn by leave of the court, upon instructions to the jury to disregard it. And yet a verdict would not be set aside on that account. It amounts to nothing but a mere statement. So the proceeding here cannot, we think, be regarded as any thing more than a statement, which had no bearing upon the minds of the commissioners, in the result to which they arrived.

It is to be observed, also, that the proposition of Furbish was not of that exceptionable character disclosed in the cases referred to. It was, at most, nothing more than a state-

ment, showing for what the road could be made, should it be laid out. Still, being offered, in the first instance, as legal evidence, the exception would have prevailed, had not the evidence been withdrawn.

There can be no successful objection to receiving the affidavits of the commissioners, showing that the propositions were not treated by them as evidence. From the very nature of proceedings before road commissioners, and the numerous exceptions taken to their reports, the courts must receive their affidavits to show the true state of the facts connected therewith.

The last exception is, that damages were awarded to the administrator of the estate of Jabez Dame, and not to the heirs.

Upon an estate being decreed to be administered as an insolvent one, as was the case here, the presumption of law is that it is insolvent, and that there is not sufficient property belonging to the same to pay the debts. Until it is settled, the heirs have no control over it, and unless it shall eventually prove solvent, no interest in it. An award of damages to the heirs, before the estate is settled, and judgment upon the report by which the award is made, and a payment of the money in pursuance of that award and judgment, would, if such an award was legal and the estate actually insolvent, take from the hands of the administrator, and, consequently, from the creditors, the amount of the award, and give it to the heirs. And if such an award was legal, there would be no remedy for the wrong thus done to the creditors.

But if, on the other hand, the award is made to the administrator of the estate, who is under bonds for the discharge of his duties, and the legal appropriation of whatever comes to his hands from the estate, he will, if the estate is actually insolvent, apply the amount to pay the creditors; but in case it proves to be solvent, he then has the money for the heirs, and no injustice is done to any one.

30

In an insolvent estate, the heirs never come into possession of any of the property by virtue of their heirship. The property belongs to the creditors, and the administrator is their agent through whom it is to come ; and for the purposes of an award of land damages, he must be regarded as the proper person to whom to make it. The administrator is merely passive in the matter. He makes no sale or disposition of the real estate, for he cannot do it without a license from the court of probate. He simply receives the money for the land which the law has taken from his possession. The exceptions must all be overruled and the

*Report accepted.*