## HARRIET C. FLEMING ET AL.
### *vs.*
## WILLIAM J. COX, STATE HIGHWAY COMMISSIONER

Superior Court          New Haven County          File No. 14125
(At Waterbury)

MEMORANDUM FILED MARCH 3, 1942.

*John H. Cassidy,* of Waterbury, for the Plaintiffs.

*Francis A. Pallotti,* Attorney General, and *Leo V. Gaffney,* Assistant Attorney General, for the Defendant.

Memorandum of decision on motion for temporary injunction.

CORNELL, J. The plaintiffs consist of the surviving wife (viz., Harriet C. Fleming) and children, of the late Thomas P. Fleming, who, when he deceased intestate, owned two large tracts of land located on either side of the State highway known as Route No. 6, in Southbury in this State, both of which, together with the buildings and structures thereupon, are used as a dairy farm. The marriage of the deceased Thomas P. and the surviving Harriet C. Fleming occurred subsequent to April 20, 1877. In consequence, immediately upon the death of Thomas P., the plaintiffs became tenants in

common of the land referred to—Harriet C. (by virtue of Gen. Stat. [1930] §5156), being vested with a one-third, and each of the other plaintiffs, with a two-ninths, undivided interest therein. One of them (viz., John L. Fleming) was named administrator on his father's estate, for which trust he duly qualified and at all times mentioned herein has been, and now is, acting in that capacity. On April 28, 1939, defendant, State Highway Commissioner (hereinafter referred to as the "Commissioner") sought to re-establish the "boundary lines or limits" of the highway mentioned in accordance with the authority conferred on him by the provisions of section 530c of the 1935 Cumulative Supplement to the General Statutes. Accordingly, on the date mentioned, having carried out the formalities directed by the statute (§530c) in other respects, he gave notice of his doings to John L. Fleming as administrator aforesaid, containing a description of the boundaries and limits of the highway as he relocated them. He neglected to do likewise, however, with respect to any others of the plaintiffs.

The statute requires that such "description" shall be furnished "to each known adjoining proprietor" at his last known address. Since there is no evidence to that effect, and in view of the silence of counsel concerning the subject, it must be assumed that the estate is not insolvent, in which latter event, alone, notice to the administrator might, under some circumstances, satisfy the statutory requirement. *Goodwin vs. Milton,* 25 N.H. 458, 473, 474. Of course, immediately upon the death of Thomas P. Fleming, the title to the real estate in question descended to plaintiffs in the several rights, titles and interests mentioned *ante,* subject only to possible appropriation by the administrator for payment of any *ante mortem* debts and expenses of administration (*Bowen vs. Morgillo,* 127 Conn. 161, 168; *Perkins vs. August,* 109 id. 452, 456; *Candee vs. Candee,* 87 id. 85, 87) or of being divested by proper order of the court of probate requiring the property to be sold to satisfy some condition encountered in the course of administration. *Candee vs. Candee, supra,* p. 87. This, notwithstanding the content of section 4956 of the General Statutes, Revision of 1930, which provides, among other things, that: "The executors and administrators of deceased persons shall, during the settlement of the estates of such persons, have the possession, care and control of their real estate, and all the products and income of such real estate during such time

shall vest in them as personal property, unless such real estate has been specifically devised...." While earlier cases intimate otherwise (e.g., *Nichols vs. Dayton*, 34 Conn. 65, 66, 67) this provision came later to be construed to only confer upon an executor or administrator the custody or control of real estate "for the purpose of enabling him to defend the land from acts of trespass, to enforce payment of rent, and to hold the income until it shall be known whether it is to go to heirs or creditors." *Remington vs. American Bible Society*, 44 Conn. 512, 516, 517. It is the heirs at law or specific devisees of land who may maintain ejectment, while the estate of which it is a part is in course of settlement. *Stevens vs. Smoker*, 84 Conn. 569, 574; *Foote vs. Brown*, 81 id. 218, 225. The title resides in them during administration unless and until the realty is sold by proper order of the court of probate. *Perkins vs. August, supra*, pp. 456, 457. It is not in suspension during the settlement of the estate because of the possible circumstance that it might be required for the payment of the intestate's debts. *Foote vs. Brown, supra*, p. 225. The statute (§530c), is concerned with notice to the proprietors of real estate adjoining highways whose limits the Commissioner re-establishes by authority of its provisions—not those who may be in the temporary custody or control of it. The word "proprietors" is a synonym of "owners." The two are used interchangeably in the statute in question as appears from its text. "Adjoining proprietor[s]" as employed therein means adjoining owners, which in turn connotes as between them and an administrator those who have the legal title. It is the plaintiffs who as the surviving wife and heirs are the "adjoining proprietor[s]", within the meaning of the statute, to whom the required description of the relocated bounds and limits of the highway should have been mailed. *Highway Commissioners vs. Chambers*, 265 Ill. 113, 116, 106 N.E. 492, 493; *Boynton vs. Petersborough & Shirley R.R. Co.*, 4 Cush. (Mass.) 467, 469; *Kane vs. Kansas City, Ft.S. & M. Ry. Co.* 112 Mo. 34, 38, 20 S.W. 532, 533. The administrator had no such interest in the premises as entitled him to be made a party to the proceeding. *Highway Commissioners vs. Chambers, supra*. Palpably, notice to him alone was no notice to the plaintiffs, and if such a fact be material, there is no evidence that any of the plaintiffs came into actual knowledge of the proceeding at any time material to the instant inquiry, and did not appeal as they otherwise

might have done (§530c, *supra*) and so cannot be said to have waived any defect in the proceedings. The failure to comply with the statutory direction on the Commissioner's part made a nullity of his attempt to effect such re-establishment and none resulted from the proceedings taken as against the plaintiffs, wife and next of kin. *Hartford Trust Co. vs. West Hartford,* 84 Conn. 646, 651, 652. *And see, West Hartford vs. Coleman,* 88 id. 78, 80.

The attempt to relocate and re-establish the limits of the highway where plaintiffs' land adjoins it, was, it appears, a step preliminary to widening and otherwise improving it. This last referred to plan became manifest on September 19, 1941. On that date, the Commissioner filed with the Clerk of the Superior Court in New Haven County, a general description of portions of plaintiffs' property proposed to be devoted to such purposes, together with an assessment in which it was stated that the damages exceeded the benefits in the sum of $2,731. This was as required by section 1528 of the General Statutes, Revision of 1930, which provides a procedure for the taking of land by the Commissioner for trunk line highway purposes. The land so taken for the widening consists of a strip along the west side of the highway about 688 feet in length (designated "Parcel No. 2"), which for the most of its distance, is approximately 10 feet wide. This comes to a point at its northerly end; and on the east side two parcels—not contiguous to each other, one about 216 feet in length and approximately 48 feet deep, and the other about 411 feet long and about 48 feet deep on its northerly, and about 105 feet deep on its southerly end. An appeal for a re-assessment of benefits and damages is provided for in section 1531 of the General Statutes, Revision of 1930, and plaintiffs on or about October 6, 1941, pursued the course so made available to it. The description of the land "taken" as filed with the Clerk of the Superior Court on September 19, 1941, for the proposed widening and improvement predicated on the assumption that the Commissioner had effected a relocation of the highway bounds and limits in the invalid proceeding, *ante,* commenced by him on April 28, 1939.

Matters stood at this pass when on September 25, 1941, plaintiffs instituted an action to which the present motion is incidental, claiming damages of $1,000 and relief by injunction against the Commissioner because of his doings as described.

In this, the validity of the purported re-establishment of the highway limits made April 28, 1939, is challenged, not only for the reasons noted *supra,* but, also, because as plaintiffs claim, the lines affected to be fixed in it are erroneous in that there is included within them land which has never formed any part of the highway. Of consequence is the fact that on the west side of the road a barn which houses some 20 head of cattle and three work horses used in connection with the operation of the dairy farm extends within the area for an average distance of about eight feet. Since such areas lie outside the travelled portion of the road but are not included within any valid relocation of the highway nor form part of the land "taken" for the widening, etc., of the highway by the filing of the description and notice on September 19, 1941, *ante,* plaintiffs maintain that they are being deprived of it without compensation in violation of section 11 of article I of the Constitution of the State of Connecticut, and without due process of law in contravention of the Fifth Amendment to the Constitution of the United States; in addition, as respects the additional land taken for the widening and other improvement of the highway, it is contended that its condemnation is unreasonable, in bad faith and in abuse of power for reasons hereinafter noticed. The instant motion, filed October 20, 1941, asks that the Commissioner be restrained from entering upon either the land included within the purportedly re-established lines of the highway in the proceeding under section 530c or that taken for the widening, etc., under section 1528, both *supra.* Upon the original hearing it developed that there could be no assurance concerning certain phases of the issues without the presence of the Commissioner— who was absent—or someone from his office who could furnish information relative to matters as to which data was required. Thereupon, the hearing was adjourned until such date as the parties might agree to resume, upon assurance from the assistant attorney general that the commissioner would not interfere with the *status quo* in the meantime.

During the interim, viz., on November 10, 1941, the plaintiffs filed an amendment to their motion for a temporary injunction in which it was alleged that on November 4, 1941, the Commissioner by filing a notice with accompanying descriptions with the Clerk of the Superior Court commenced another proceeding involving the land included within the invalidly relocated highway lines. This, the evidence shows,

is of equivocal character and hence, of doubtful purpose, in that while it recites that such land is thereby "taken" and assesses equal benefits and damages in the sum of $1 each, nevertheless purports to acquire the same "pursuant to the provisions of sections 530c and 1528 of the General Statutes."

From this action on the Commissioner's part, also, the plaintiffs appealed. Since the notice referred to obviously transpired subsequent to the commencement of the instant action, it is not alleged in the complaint and no amendment has been made to the latter pleading to make it a part thereof up to this time. It follows, therefore, that its presence in the motion for a temporary injunction based upon the cause described in the complaint furnishes the court with no sanction to give effect to the content of such amendment as a justifying basis upon which to predicate the issuance of an interlocutory restraining order. It may, however, be considered in determining whether the court should exercise its discretion whether a temporary injunction should issue (*Ferguson vs. Borough of Stamford,* 60 Conn. 432, 448), provided it is found that some legal right or rights of the plaintiffs are in imminent danger of violation as a result of the matters set forth in the complaint. It will be taken into account from that standpoint, only, at this point.

The (1) re-establishment of lost or doubtful highway limits and (2) the taking of land for the widening, altering or improvement of highways are proceedings which differ from each other in conception, character and effect. In the first, no taking of land is involved; the purpose is merely to define the areas which have already become subject to public easement for highway purposes, the outlines of which have become obscure. The appeal from the Commissioner's relocation authorized by the statute (§530c) has but one purpose, viz., the judicial determination of the question whether such lines may be re-established and, if so, their location. In the second, an original subjection of land to the public easement is the definite objective and result. This constitutes a taking and necessarily premises on the fact that such property is not already under the burden of the same public use as it is being appropriated for. The first calls for no compensation; the second requires it. The purpose of the appeal afforded in the latter is the judicial determination of the question of compensation and that only. *Andrews vs. Cox,* 127 Conn. 455, 464; *Munson*

*vs. MacDonald,* 113 id. 651, 660; *Young vs. West Hartford,* 111 id. 27, 30.

The distinction between the two proceedings is observed in the statutes which authorize them, viz., sections 530c and 1528, *supra,* no detailed comparison of which is necessary here. Suffice it to say that the impracticability of proceeding under both at the same time, as the Commissioner purports to do by virtue of the notice filed with the Clerk of the Superior Court on November 4, 1941, coincides with the innate differ-ences between the two. Considerations of these characters forbid the joinder of both proceedings in one, or the pursuit of both coincidentally. Specific reference need be made to but one provision only which is contained in section 530c since it is under this that the Commissioner claims sanction for his attempt to combine the two and asserts the authority to effectuate them together. Thus, it is provided: "If said commissioner shall be unable to prove the location of any such boundaries or limits, he may purchase or condemn such right of way over land adjoining the traveled portion of the high-way as shall, in his opinion, be necessary for highway pur-poses under the provisions of sections 1528, 1529, 1530 and 1531."

It is obvious, of course, that the Commissioner required no special power under section 530c (which as previously noted is concerned only with the relocation and re-establishment of lost and uncertain highway limits) to enable him to condemn land anywhere for highway purposes. That right was con-ferred upon him in the broadest of terms under section 1528 and existed in him quite regardless of whether he had previously attempted to clinch the right to use areas adjoining the travelled portion of a road prior to its exercise or not under section 530c. The right to condemn conferred in section 1528 exists quite independently of and without reference to any ability to relocate and re-establish lost or obscure highway limits under section 530c and is not limited by or dependent upon anything contained in the latter. The two statutes read together, even without the clause quoted from section 530c, *supra,* connote that where land is necessary to widen the travelled portion of a highway within the Commissioner's jurisdiction, if it is his opinion, that it or part of it forms a part of the existent road, he may attempt to establish that fact under the provisions of section 530c, but if he is unable to do

so, *then,* he may take what is required in accordance with the provisions of section 1528, or if at the outset he feels that it would be impossible for him to prove that the areas he demands lie within lost or uncertain highway limits, though there be doubt about it, he may proceed directly to condemn them under section 1528. This is apparent from the provision upon which the Commissioner relies, which does not pretend to confer an original or additional authority upon him in a *boundary relocation proceeding under section* 530c, but specifically directs that any taking of territory unsuccessfully attempted to be shown to be within lost or uncertain highway bounds shall be pursued *under* the authority of section 1528. Under the provisions of the latter, land is taken when the Commissioner files in the office of the Clerk of the Superior Court the required assessment, immediately following which he may enter upon the property and convert it to highway use. *Munson vs. MacDonald,* 113 Conn. 651, 657. All that follows thereafter is concerned only with a re-assessment of benefits conferred on or damages sustained by the affected property owner. *Andrews vs. Cox,* 127 Conn. 455, 464; *Munson vs. MacDonald, supra,* p. 660. Palpably, if as the Commissioner seems to claim, he may condemn land under the provision quoted *supra* and at the same time and in the same proceeding attempt to show that it is already subject to the very use for which he takes it, and for which, therefore, he does not need to appropriate it, the obvious answer is that no such confused intention can be attributed to the Legislature.

One other element is, alone, decisive. The ascertainment of benefits and damages consequent upon a taking under section 1528 must be made as of the date of such taking. *Andrews vs. Cox, supra,* p. 458, and cases cited in the opinion in that case. But, under the provision on which the Commissioner relies, the condemnation must await another event, viz., the determination of whether the Commissioner has succeeded in a proceeding under section 530c in *proving* the "location of any such boundaries or limits", which means, of course, that the taking must await the unsuccessful termination of proceedings to relocate and re-establish the claimed lost and uncertain highway limits. Under the procedure which the Commissioner is attempting to pursue, he purports to take the land in question, but the ascertainment of the amount of benefits and damages arising from such taking is not to be

made as of the date of the taking, nor unless and until it is demonstrated whether he had taken it or not—depending upon whether, proceeding under section 530c, he shows that it or a part of it is already within the highway limits and so will not have to be appropriated or paid for. Additional observations might be made to further demonstrate the untenability of the claim that the provision upon which the Commissioner depends authorizes simultaneous proceedings to relocate and re-establish lost highway bounds under section 530c and one to take the same land for highway purposes under section 1528, but the considerations noted *supra* seem sufficiently decisive.

The evident purpose of the 1931 amendment which is incorporated in section 530c was the correction of an obvious self-contradiction in section 1507 of the General Statutes, Revision of 1930. Thus, as the pertinent provision read in the last named statute, it authorized the Commissioner in a proceeding to relocate and re-establish lost or uncertain highway limits to "condemn land under the provisions of sections 1529, 1530 and 1531", "for the purpose of *establishing* such lines." (Italics added.) But as previously noted: "A statutory proceeding for the survey and platting of an existing road does not operate to *establish* the road. Its purpose is merely to ascertain the courses and distances of one claimed *already* to be established." 25 *Am. Jur. Highways* §44, p. 364. (Italics added.) The provision in section 1507 empowering the Commissioner to condemn land to re-establish once existent but presently lost or obscured highway limits was consequently self-contradictory. The obvious purpose of the 1931 amendment which now appears in section 530c recognizes the distinctive differences and purposes of the two proceedings and removes the confusion existent in section 1507 by providing that the resort to section 1528 to condemn land for highway uses where it is claimed that the land required for such use is already subjected to the same, is dependent upon failure to *prove* that such land had previously constituted part of the highway or in any event "to *prove* the location of any such boundaries or limits" as he claims. (Italics added.) Which is but another way of saying that there can be no taking under such circumstances to satisfy the highway requirements until the proceeding under section 530c is concluded, which in turn obviously implies that the order of proceeding may not be reversed by making the condemnation first and then

awaiting the outcome of a proceeding under section 530c to determine whether any benefits and damages need be assessed and for what, and in any event ascertaining the amount of same as of the day of final judgment in the section 530c proceeding instead as of the date when the so-called taking is made. Proceedings for the exercise of the power of eminent domain are entirely statutory. The legislative conditions must be strictly observed and their directions strictly complied with, and this must appear on the face of the proceedings. *State vs. McCook*, 109 Conn. 621, 629; *Conners vs. New Haven*, 101 id. 191; *Crawford vs. Bridgeport*, 92 id. 431, 435. The procedure adopted here, at least, in so far as it involves an attempted taking of land under the provisions of section 1528 presents not merely a failure to comply with the requirements of that statute, but in the attempt to combine such a proceeding with one under section 530c is without any statutory authority whatever. It, in consequence, represents an abuse of power by the Commissioner. Nothing in the proceeding commenced November 4, 1941, is potent to influence the discretion of a court or judge exercising equitable powers to refrain from granting injunctive relief, if the latter would be otherwise justified.

As respects the taking of the land lying outside of the purported re-established limits (viz., that of September 19, 1941) the plaintiffs attack the validity of this from two angles. First, it is contended that the statute authorizing the proceeding is unconstitutional in that a condemnation of private property for public use in accordance with its provisions would authorize a taking without due process of law and, second, if the statute does not contravene constitutional requirements, then the taking under its authority, is, in this instance, invalid. The first mentioned of these contentions is based on the circumstance that the statute (viz., §1528, *supra*) makes no provision for an appeal in which a judicial review of the validity of the Commissioner's action in proceeding under its authority can be had (*Munson vs. MacDonald, supra*, p. 660), especially in view of the fact that no other statute provides such a review. In substance, the statute (§1528, *supra*) authorizes the Commissioner to "take any land he may find necessary for the layout, alteration, extension, widening, change of grade or improvement of any trunk line highway." It provides that "the owner....shall be paid by the state for all damages and the state shall receive from the owner the amount or value of all

benefits resulting from such taking. . . .", and requires that the assessment of such benefits and 'damages shall be made by the Commissioner and filed by him in the office of the Clerk of the Superior Court in the county where the affected land is situated, upon which the Clerk is directed to mail a copy to each owner of such land. The filing of such notice with the Clerk of the Superior Court constitutes the taking of such property. *Munson vs. MacDonald, supra,* p. 657. This accomplished, it is provided that "at any time after such assessment shall have been made by said highway commissioner, the physical construction of such layout, alteration. . . .may be made."

There is an appeal provided for in section 1531 of the General Statutes, Revision of 1930, but it is limited to and affords a review only of the assessment of benefits and damages made by the Commissioner. But "the pendency of any such application for re-assessment shall not prevent or delay the lay-out. . . .of any such highway." Gen. Stat. (1930) §1531: *Munson vs. MacDonald, supra,* p. 657. It is true, as the plaintiffs contend and as already noted, that the statute affords no review of the validity of the condemnation. *Munson vs. MacDonald, supra,* p. 660. But, the fact that a statute conferring the power of eminent domain makes no provision for a judicial review of the validity of the exercise of such authority in any particular instance—even though there be no provision for such a review in any general statute—does not affect the constitutionality of such statute. *Bridgeport Hydraulic Co. vs. Rempsen,* 124 Conn. 437, 441; *Munson vs. MacDonald, supra,* p. 656; *State vs. McCook,* 109 Conn. 621, 639; *Water Commissioners vs. Manchester,* 89 id. 671, 679; *Water Commissioners vs. Johnson,* 86 id. 151. The concerned property owner is remitted to an action in equity and is entitled to relief only if he can sustain the burden of proving that the condemnation is one tainted by unreasonableness, bad faith or the abuse of the power confided to the condemnor. See cases cited next *supra.* This last, though very limited remedy, however, resides in him, by the settled law of this State, and since it does, a denial of it to him deprives him of the benefit of due process of law as this is defined in *Water Commissioners vs. Johnson, supra,* pp. 151, 162, and in *John J. McCarthy Co. vs. Alsop,* 122 Conn. 288, 297.

In the law of eminent domain, particularly where land is taken under the provisions of municipal charters, the courts

often speak of two "takings" as involved in the condemnation of private property for public use, viz., (1) that which is theoretical only and occurs when the final act under the statutorily delineated procedure is performed by which specific property is designated to be condemned, as a result of which proceedings for the ascertainment of the amount of compensation are set in motion; and (2) actual physical occupation and use of the land condemned. While under neither the United States Constitution nor that of the State of Connecticut is it invariably necessary that actual payment precede the physical appropriation of property taken by eminent domain, nevertheless in the absence of such payment (or the setting aside of specific moneys to insure it) the condemnor is without right to enter upon or occupy the property condemned, unless the public faith is pledged to a certain and reasonably prompt payment thereof. *Keller vs. Bridgeport,* 101 Conn. 669, 674, 675. This requirement is satisfied when land is condemned by the Commissioner under section 1528 by the provisions of section 1529 of the General Statutes, Revision of 1930, which give absolute assurance of payment. *Stock vs. Cox,* 125 Conn. 405, 417; *State vs. McCook,* 109 id. 621, 630. Unless a statute makes specific provision otherwise, there is, under such circumstances, no impediment to the immediate occupancy and physical appropriation of land following its mere designation as "taken", even without any statutory declaration to that effect.

In the instant statute (§1528) this is not only recognized, but emphasized, in the provision contained therein which reads: ".... and, at any time after such assessment shall have been made by such highway commissioner, the physical construction of such layout, alteration, extension, widening, change of grade or other improvement may be made." *Munson vs. MacDonald, supra,* p. 657. While as noted, nothing in this provision collides with constitutional requirements concerning the payment of compensation before physically entering upon property taken, because of the certainty of payment provided by the other statutes referred to *supra,* yet, in authorizing the Commissioner to occupy and appropriate the land taken at once upon filing the required notice of assessment in the office of the Clerk of the Superior Court, it leaves it within his power to prevent the affected landowner from effective resort to the only avenue of redress open to him if he claims the taking to be invalid—or, at least, so nullify the effectiveness of any

equitable remedy that he might be entitled to the benefit of. For it is evident that since the taking occurs, for all purposes, at the instant of the filing of his assessment, the Commissioner by immediately moving his appliances onto the condemned property could arrive there even before the property owner had received the notice by mail for which the statute provides and have laid waste the land to an extent that would make application for injunctive relief fruitless. And if, notwith-standing, the owner whose rights are violated establish the validity of his claims, he could, nevertheless, recover no damages for the wrong committed by the Commissioner acting in his official capacity. *Munson vs. MacDonald, supra,* p. 650.

In considering whether a statute is unconstitutional the test is not what has been done under it, but what may be done under it. *City of Richmond vs. Carneal,* 129 Va. 388, 392, 106 S.E. 403, 405, 14 A.L.R. 1341, 1343. By this criterion the statute deprives property owners whose land is condemned for highway purposes under its authority of the right to re-dress where the taking is invalid for any other reason or as the result of conduct on the part of the Commissioner which is unreasonable, in bad faith, or in abuse of power. Within the scope of the last enumerated designations are instances where property is condemned for purposes not wholly public (*Connecticut College for Women vs. Calvert,* 87 Conn. 421, 425) or for uses which are not sanctioned by a reasonable pub-lic necessity. *State vs. McCook,* 109 Conn. 621, 629. From what has been said, it seems apparent that there is, at least, grave doubt of the constitutionality of the statute in so far as it authorizes the Commissioner to take immediate occupancy and use of property condemned for highway purposes after the filing of the required assessment of benefits and damages. However, no such declaration is required here for the reason that plaintiffs did succeed in bringing action before the Com-missioner entered upon their land to commence the construc-tion of the project. They consequently cannot be heard to urge the unconstitutionality of the statute in the noted respect. *Rindge Co. vs. County of Los Angeles,* 262 U.S. 700, 710; *Dahnke-Walker Milling Co. vs. Bondurant,* 257 id. 282, 289; 16 C.J.S. Constitutional Law §87, p. 179. But by like token they are entitled to a judicial determination of their contention that the condemnation of the land outside of· the limits where the Commissioner would relocate and re-establish the lines of Route No. 6, is unreasonable, in bad faith and in abuse of the

Commissioner's power. In support of the claim that such is the case, two reasons are assigned, viz., (a) that there is no public necessity for such taking to justify it and (b) even if there is, the manner in which such power is being exercised is so arbitrary as to constitute a misuse of the Commissioner's authority.

The first of these, i.e. "(a)" *ante,* is contended to arise from the fact that the land taken is not required for or at least, will not be devoted to, any present use for highway purposes. To sustain this, plaintiffs rely upon the following subordinate facts: It appears that the volume of motor-propelled traffic over Route No. 6, as is also the case with a number of highways throughout the State of similar character, width and construction, has greatly increased over the past few years. Because of this the Commissioner feels that the highway should be widened at once and in any event, so far as he now foresees, it will be required that it be made into a four-lane road within the next five years in contrast with the two-lane way that it now is. An additional reason for this conviction hangs on the expectation that Route No. 6 will connect ultimately with a traffic artery of the same number of lanes which is apparently conceived by highway or traffic authorities in the State of New York and which if and when this eventuates it will join at Mill Plain, which is west of Danbury. For the present, however, in view of the restricted amount of funds available and out of a design to afford relief on as many highways similarly situated (with respect to increase of traffic over them) as possible, within the means and facilities presently at hand, it is his purpose to improve the two lane highway as it now exists—apparently by altering it, making changes in the grade, etc., and providing it with a surface of such construction that it will fit into and form part of the eventually visualized four-lane way if and when that is realized. The taking at this time of the additional areas adjoining both boundaries of the highway as they now or are ultimately found to be, is to avoid having to acquire or condemn such land later when it is needed for the actual building of the additional two lanes. The land taken and which will not be used for highway purposes now or in the immediate future, or with certainty at any definable time hereafter is, nevertheless, no more than will be required for such a highway when wrought into one of such sufficient width as to furnish the envisaged facilities. It, thus, admittedly, appears that the disputed area of

land taken by the Commissioner is not intended for present use. Plaintiffs maintain that the fact that it may not be employed for highway purposes for five years and that it is not definitely certain that the enlarged highway will be then constructed, establishes that there is no public necessity for taking it at this time and hence that its condemnation at this date indicates an unreasonable exercise of the power of eminent domain and an abuse of the condemnor's authority. The mere circumstances, alone, that the Commissioner has condemned more than he needs for the improvement of the two-lane highway which is the purpose of the immediate project does not establish unreasonableness, bad faith or abuse of power on his part. "In determining whether the taking of property is necessary for public use not only the present demands of the public, but those which may be fairly anticipated in the future, may be considered." Rindge Co. vs. County of Los Angeles, 262 U.S. 700, 707. See, also, City of Grand Rapids vs. Barth (In re Widening of Fulton Street), 248 Mich. 13, 16, 226 N.W. 690, 691, 64 A.L.R. 1507, 1509; 10 R.C.L. Eminent Domain §§29, 35, 37, pp. 32, 39, 41; Burnham vs. Mayor and Aldermen of Beverly, 309 Mass. 388, 35 N.S. (2d) 242, 135 A.L.R. 750; Munson vs. MacDonald, supra, p. 656, and cases therein referred to.

The question, then, to be ultimately decided is not whether the land in dispute is needed for present use, or the Commissioner intends to so employ it, but, rather, whether the taking exceeds what is reasonably required for a rationally foreseen prospective need. · This may involve the inquiry whether it is being condemned for mere possible future contingencies which may never arise, or if they ultimately do eventuate, can only happen so far in the future that there is no reasonable basis upon which to sanction a taking of land to satisfy them at this time, or whether there is now a reasonably probable prospect that the highway will have to be enlarged into a four-lane route within a presently rationally perceivable reasonably future period. While the plaintiffs have not stated the question this way, it is apparent from the contentions which they have advanced, that it is within the comprehension of their claims. It is not the function of the instant motion to elicit a decision upon this factual question. It is only necessary to ascertain upon the evidence and from other circumstances brought out at the hearing whether the situation will present a substantial question upon a full trial. Sufficient has

been produced to be convincing that a fair question of fact is presented; that the plaintiffs' claims in this respect are made in good faith and that they are hence entitled to a full hearing upon the merits. This requires that the existing *status quo* be maintained until such hearing may be had and the question decided with finality.

Plaintiffs' further contention is that the taking of the land for the widening is invalid because it is done in such a way as to constitute a misuse of the Commissioner's statutory authority (viz., "(b)" *supra*), arises out of certain indisputable facts, the more important of which are the following: To accomplish the widening for the projected four-lane route in accordance with the layout made, it will be necessary to take land belonging to the plaintiffs lying on both sides of the road substantially opposite, viz., a strip on the west side designated "Parcel No. 2" of a total frontage of about 688 feet; and one on the east side having a frontage of 882 feet. In condemning the land on the latter side, however, the Commissioner has omitted to take a section having a frontage of about 155 feet and a depth of about 70 feet (measured from the old wall line). This area is approximately opposite the barn heretofore referred to and on it the homestead stands, in the foreground of which are several large trees. It will be hereafter referred to as the "house-lot." It lays between two sections of land which the Commissioner has taken on that side of the highway. One of the latter adjoining the house-lot on the north side has a frontage along the highway of about 216 feet and is identified in the description filed as "Parcel No. 1"; the other which lays next to the house-lot on the south side thereof adjoins the highway for a distance of about 411 feet. This is denominated "Parcel No. 3." On Parcel No. 1 is a refreshment stand and a number of trees; Parcel No. 3 is pasture land with a brook flowing through it. The depth of the two parcels condemned is such that if the interior or "taking line" were extended across the house-lot the area necessary to be taken to effectuate the allegedly contemplated project would include that where the dwelling stands, and, of course, the trees in the foreground of the latter.

It is thus evident that instead of condemning all of the land on the east side of the highway, claimed to be required to effectuate the widening, the Commissioner has divided it for the purpose of taking it into three sections, two of which he has condemned and the third of which (viz., the house-lot with the

dwelling upon it), although essential to the achievement of the project, he has left to be taken at some future and presently undisclosed date. The reason for this is openly avowed. It is that the house is as valuable at this time as it ever will be and it is the scheme to take it later when, it is hoped (or anticipated) it will be worth less. Unmentioned is the consideration that probably the greatest influence in the possible depreciation of the value of the house-lot are (1) its separation from the rest of the acreage of which, as a farm, it forms an essential part and (2) the fact that the land on both sides of it is already condemned, coupled with the overhanging certainty that it, too, will be taken at any moment that the Commissioner considers opportune to acquire it. A third factor which upon a full hearing might very reasonably develop, relates to the value of the two parcels already taken (i.e. parcels 1 and 3) since it is not at all unreasonable to consider that the value of these condemned separately from the house-lot, as they have been, results in a less price per acre for such areas, too, than would be the case if the entire strip which the Commissioner claims he will need for the improvement were taken at one time, with a consequent diminution of value of the land remaining after the taking. *Andrews vs. Cox,* 127 Conn. 455, 457.

The only authority conferred on the Commissioner by section 1528 is that of condemning land for any of the purposes stated therein. With the amounts of benefits and damages which may be awarded as a result of any taking properly made, he has no concern whatever. These are to be determined upon appeal by the affected property owner in the manner outlined in section 1531 of the General Statutes (now amended as in section 199f of the 1941 Supplement to the General Statutes). The assessment which the Commissioner is required to file in accordance with the provisions of section 1528 has no more effect than that of an offer and only serves the purpose of activating the process for the determination of compensation. *Munson vs. MacDonald, supra,* p. 657. In dividing the property claimed by him to be required for widening into segments and in refraining from taking the house-lot in the hope of thereby ultimately obtaining all the land that would be needed for the improvement at a less figure than would be the case if the whole strip were condemned at the same time, the Commissioner misused the authority conferred upon him. If by reason of the Commissioner's action, the plaintiffs are damaged

in their property or property rights they are entitled to injunctive relief. At any rate, sufficient appears to justify restraining the Commissioner from entering upon the land involved and converting it to highway uses until the plaintiffs are afforded full opportunity to present their claims to the court.

The Commissioner, in a brief filed in his behalf, seems to contend that in so far as the plaintiffs claim damages against him in his official capacity they have no cause of action. This is obviously true. *Munson vs. MacDonald, supra,* p. 660. In so far as it is claimed that the Commissioner may not be enjoined, however, from performing acts beyond the scope of the statutory provisions from which the source of his authority proceeds and by which it is limited, or from exercising his powers unreasonably, in bad faith or in abuse of them to the injury of any person in his property, the contention is untenable. In granting injunctive relief under such circumstances, courts of equity do not interfere with a State officer in the performance of his official duties; they restrain, only, illegal conduct, in excess of authority, performed under the cloak of official sanction. 32 *C.J. Injunctions* §389, p. 247. The propriety of extending equitable relief under similar circumstances has been, at least, strongly intimated in this State. *Stock vs. Cox,* 125 Conn. 405, 418, 419.

Another objection to the issuance of a temporary injunction in the situation existent here must also be overruled. It has reference to the fact that the plaintiffs appealed from the proceeding commenced by the Commissioner on September 19, 1941, whereby he purported to take plaintiffs' land for the widening, and that of November 4, 1941, in which he sought to exercise the powers conferred upon him in section 530c and section 1528 with respect to the areas which he had invalidly endeavored to relocate and re-establish as within the highway limits on April 28, 1939. The contention is that by taking advantage of the appeals provided by statute, plaintiffs have incapacitated themselves from questioning the validity of the proceedings, relying upon the rule applied in such cases as *Chudnov vs. Board of Appeals,* 113 Conn. 49, 57, referred to in the opinion in *National Transportation Co., Inc. vs. Toquet,* 123 Conn. 468. No discussion need be indulged in here to point out the distinction between a situation such as presented in the *Chudnov* case and the instant one. This has been made clear in the opinion in the *National Transportation Co.* case, *supra,* pp. 478, 479. In any event, the mere institution of such

appeals for the purpose of avoiding being debarred from seeking a re-assessment of benefits and damages while the validity of the proceedings is being attacked in an independent action is not such an election as will prevent the maintenance of such suit. *Norcross vs. City of Cambridge,* 166 Mass. 508, 510, 44 N.E. 615, 616, 33 L.R.A. 843.

These conclusions result: The purported proceeding to re-locate and re-establish the alleged highway limits, commenced on April 28, 1939, is void for lack of the required statutory notice to the plaintiffs; the proceeding commenced on September 19, 1941, for the purpose of widening the highway is invalid (a) since the area taken (in the absence of a valid relocation of highway limits where the proceedings begun April 28, 1939, purported to place them) predicates upon the absent validity of the proceedings of April 28, 1939, and omits the area included in such latter proceeding, which unless the same is ultimately found on a valid relocation proceeding to be within the highway limits would also have to be condemned to effect a valid widening of the highway; and (b) in so far as the land taken on the east side of the highway and the omission of the house-lot is concerned because this indicates that the Commissioner has abused the power conferred upon him by statute. These conclusions are not affected by the proceedings of November 4, 1941, in which the Commissioner endeavored by a joint proceeding under section 530c and section 1528 to re-establish the highway limits and take the land claimed to be within them, which proceeding, at least in so far as the purported taking in such proceeding is concerned, is invalid and is of doubtful validity in so far as the same purports to relocate lost or uncertain highway limits.

The determinations made require that a temporary injunction issue to restrain the Commissioner from entering upon, occupying, using or otherwise interfering with the plaintiffs in their occupancy, possession or control of any of the areas involved, pending further order of the Superior Court or a judge thereof. To justify the inclusion within the restraint of any intrusion under the proceeding of November 4, 1941, it will be necessary that the subject matter of this be added to the complaint by amendment. The issuance of the injunction will be stayed for five days next following the filing of this memorandum with the Clerk of the Superior Court at Waterbury. If such amendment be not filed during such five-day period, the injunction will issue without reference to any entry upon,

occupancy of, or construction to be done upon the areas described in such proceeding of November 4, 1941; if such amendment be filed, the restraint will apply to any entry upon or occupancy of the property under the proceeding of November 4, 1941. In any event, counsel for the plaintiffs is requested to prepare the order and to submit it to the assistant attorney general who represented the Commissioner at the hearings had, for his approval of the descriptions of the affected land contained in it, before submitting it to the undersigned for signature. To avoid possible later misunderstandings, it would be preferable, though it is not required, that the various areas involved be described in the order of injunction by adherence to the engineering data contained in the several maps filed at the hearing.