JAMES A. NORCROSS & another *vs.* CITY OF CAMBRIDGE
& others.

Middlesex.    March 24, 25, 1896. — September 4, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & BARKER, JJ.

*Cambridge Park Act — Constitutional Law.*

The St. 1892, c. 341, authorizing the city of Cambridge to lay out and maintain
public parks, and providing that the damages sustained by the taking of any
lands for that purpose shall be assessed with interest at the rate of four per
cent from the date of the actual entry and taking of possession by the city, is
constitutional.

BILL IN EQUITY, filed May 4, 1895, by James A. Norcross
and Orlando W. Norcross, against the city of Cambridge, John
O'Brien, Henry D. Yerxa, and George H. Cox, alleging that the
plaintiffs were the owners in fee of certain parcels of land in Cam-
bridge; that on February 7, 1894, the defendant city caused to
be recorded in the registry of deeds a certain instrument by which
the city attempted to take and hold, by right of eminent domain,
certain lands therein, including the lands of the plaintiffs above
mentioned, and to devest the plaintiffs of their title to the lands;
that the defendants O'Brien, Yerxa, and Cox were, at the time
of the acts of the city, and still are, park commissioners within
and for the city, so constituted in accordance with an ordinance
of the city approved July 11, 1893; that the defendant city and
the defendants O'Brien, Yerxa, and Cox, assuming to act in the
premises as park commissioners of the city, had entered upon
the lands of the plaintiffs, and caused entry to be made thereon
for the purpose of surveys, the setting of boundaries, the estab-
lishment of grades, and for other purposes, and had caused earth,
stone, and other obstructions to be placed upon the land; that
the defendants O'Brien, Yerxa, and Cox, attempting to act as such
park commissioners for and on behalf of the city, had recently ad-
vertised for bids for the construction, according to contract and
written specifications, of certain changes and alterations in the
lands of the plaintiffs above mentioned, and the defendants were
about to make further entry upon the lands of the plaintiffs for

the purpose of carrying out such changes and alterations, by which, if the same were permitted, the plaintiffs would suffer irreparable injury; that the acts of the Legislature referred to in the instrument of taking, being St. 1892, c. 341, entitled, " An Act to authorize the city of Cambridge to lay out and maintain public parks," and the act in amendment thereof, being St. 1893, c. 337,* are unconstitutional and of no effect, and do not confer upon the defendants any lawful power to take or attempt to take, by right of eminent domain or otherwise, the lands of the plaintiffs, or any part thereof, or in any manner or for any purpose to enter upon or obstruct the same, or interfere with the plaintiffs in their enjoyment of the same, for the reason that no provision is made therein for adequate and lawful compensation to persons injured by the acts so attempted to be authorized, and for other reasons; that no authority existed in law for the acts of the defendants complained of, and the same had been committed and were threatened and were about to be committed without right; and that the instrument so wrongfully caused to be made and recorded constituted a cloud upon the title of the plaintiffs to their lands.

The prayer of the bill was that the defendants might be enjoined from entering in any manner and for any purpose, under a claim of right established by the above named statutes, the

---

* The St. 1892, c. 341, provides, in § 1, that the city of Cambridge may take and hold, by purchase or otherwise, all such lands within the city as it may deem advisable, " and may lay out, maintain, and improve the same as a public park or parks."

Section 2 provides for the filing in the registry of deeds of a description of any lands so taken.

Section 3 provides that the city shall pay all damages sustained by the taking of lands for the purposes of the act; that, if any person sustaining damage does not agree with the city upon the amount of it, he may apply to the Superior Court for an assessment of the damage; and that the court may appoint three disinterested persons, who shall assess the damages sustained, " together with interest at the rate of four per centum per annum from the date of the actual entry and taking of possession by said city."

Section 4 provides that, if either party is dissatisfied with the award of damages, such party may have a trial by jury, who shall assess the damages " with interest as aforesaid."

The St. 1893, c. 337, which is entitled " An Act relative to public parks in the city of Cambridge," amends the previous statute in several particulars which are not material in this case.

lands of the plaintiffs or any part thereof, and from making or attempting to make any changes or alterations in the same in any particulars, or from interfering with the plaintiffs in the free, unrestricted, and uninterrupted use and enjoyment of their lands, or from having or claiming any title to, rights in, or claim upon the lands or upon the plaintiffs in respect thereof; and that the defendant city might be further ordered to execute, acknowledge, and deliver to the plaintiffs a suitable release or disclaimer of right, title, interest, claim, and demand in the premises, and to pay the plaintiffs their lawful damages so wrongfully sustained by them by reason of the acts above set forth; and for other and further relief.

The answer admitted the taking of the lands as alleged, and by way of demurrer set up that, prior to the bringing of this bill, the plaintiffs filed a petition in the Superior Court for an assessment of their damages for such taking, which was still pending; and that the plaintiffs by such proceeding had admitted the validity of the defendants' acts, and could not maintain this bill.

The plaintiffs were allowed, upon their motion, to amend the bill by adding the allegation, that on January 21, 1895, they filed in the Superior Court a petition for a jury to assess the damages sustained by them by reason of the acts of the defendants, and that the petition was still pending.

Hearing upon the bill as amended and the demurrer, before *Barker*, J., who, with the consent of the parties, reserved the questions raised by the demurrer for the determination of the full court.

*R. M. Morse & G. A. A. Pevey*, for the defendants.

*F. Rackemann*, (*J. D. Colt* with him,) for the plaintiffs.

MORTON, J.  The objection that the bill should be dismissed because of the pendency of the proceedings in the Superior Court has not been pressed, and is disposed of by the case of *Moore* v. *Sanford*, 151 Mass. 285.

The plaintiffs contend that the statute under which their land was taken is unconstitutional, first, because it does not provide compensation by way of interest from the date of the paper taking to the date of the actual entry and taking of possession, and secondly, because the rate of interest is fixed at four per

cent instead of six. See Pub. Sts. c. 77, § 3, and c. 171, § 8. In other words, the plaintiffs contend that they have a constitutional right to interest at six per cent from the time of the formal taking.

The case of *Edmands* v. *Boston*, 108 Mass. 535, seems to us decisive of this. Aside from that, we should hesitate to say that a statute which permits the damages to be assessed as of the date of the formal taking, but postpones interest till possession is actually taken, does not provide the " reasonable compensation " which the Constitution requires. The Legislature may have considered, as was said in *Edmands* v. *Boston*, and, as has been thought elsewhere, that the use of the land would compensate the owner for the delay in payment. *Hamersley* v. *New York*, 56 N. Y. 533. *Donnelly* v. *Brooklyn*, 121 N. Y. 9. *Fiske* v. *Chesterfield*, 14 N. H. 240. *Chicago* v. *Palmer*, 93 Ill. 125. *Phillips* v. *South Park Commissioners*, 119 Ill. 626. *Second Street, Harrisburg*, 66 Penn. St. 132. If it did not, and he was put to trouble and expense by reason of the proceedings prior to the entry, it might be competent for the jury, as was suggested in *Edmands* v. *Boston*, and as by statute may be done in the case of highways, Pub. Sts. c. 49, § 14, to include the loss thus occasioned as an element of damage. The rule has been generally laid down in this State, that the landowner is entitled to interest from the time of the taking, because compensation has generally been regarded as due and payable then. We think, however, that the rule cannot be held so far to express a matter of common right that a departure from it by the Legislature in a statute authorizing a taking by eminent domain would render the statute in which it occurred wholly or partly unconstitutional. In the highway act it is expressly provided that interest shall be payable only from the date of actual entry. Pub. Sts. c. 49, § 14. The constitutionality of that provision, so far as we are aware, has never been questioned.

There can be no doubt, we think, that the Legislature would have the right to enact that, as between vendor and purchaser, the latter, in the absence of any contract to that effect, should not be liable for interest until he entered into possession, or took or had the right to take the rents and profits. It has been held that a taking by eminent domain is in the nature of a purchase

by the public. *Parks* v. *Boston*, 15 Pick. 198. If it is, then it is obvious that the involuntary character of the transaction *quoad* the landowner cannot take away the right of the Legislature to deal with the question of interest, as in the case of other sales. *In re Pigott*, 18 Ch. D. 146.

Further, if we assume that the damages for taking are to be regarded as a debt, (see *Frazer* v. *Bigelow Carpet Co.* 141 Mass. 126,) the right to interest as compensation or damages for the detention of a debt is not an absolute right. Sutherland, Damages, (2d ed.) § 321. At common law interest was not only not allowed, but was, it seems, unlawful. *Chesterfield* v. *Jansen*, 1 Wils. 286. *Lowe* v. *Waller*, 2 Doug. 736, 740. *Robinson* v. *Bland*, 2 Burr. 1077, 1086. *Houghton* v. *Page*, 2 N. H. 42. Sutherland, Damages, (2d ed.) § 301. Sedgwick, Damages, (5th ed.) 236, 237. 10 Bac. Abr. Usury, 264. 1 Pollock & Maitland, Hist. Eng. Law, 109.

The encumbrance caused by the formal taking is very much like that caused by a contemplated taking. There is a possibility in either case that the object in view will not be carried out, — a little more remote, it is true, in the former case than in the latter, but with the advantage to the landowner in the former case that, whether it is or is not, he gets his damages, while in the latter he does not. Further, the involuntary taking does not put the landowner in any worse position for the time being, so far as the sale or use of his property is concerned, than he would be put by a voluntary contract of sale. As a practical matter, it is generally understood that landowners do not lose anything at the hands of juries because of the involuntary character of the transaction on their part.

The plaintiffs further contend that they are entitled to interest at six per cent, because that was the rate established by general law at the time when the special statute was passed under which these proceedings have been taken. But the rate of interest is a matter for the Legislature, and the same power that established it can alter it, and has done so in this case. We know of no constitutional provision which requires a uniform rate of interest in regard to all transactions. In the case of exceptions adjudged frivolous, interest at twelve per cent may be awarded on the debt or damages. Doubtless there are other instances of excep-

tional rates to be found.  Besides, we cannot say that this case may not mark the beginning.of a legislative policy to allow four per cent hereafter in similar cases.  We certainly cannot say, if that question is before us, that four per cent does not provide reasonable compensation for the delay in payment of the damages that may be assessed.                    *Bill dismissed*