TOWN OF HINGHAM v. UNITED STATES.

In re UNITED STATES.

(Circuit Court of Appeals, First Circuit. April 9, 1908.)

No. 760.

1. EMINENT DOMAIN—PROCEEDINGS FOR CONDEMNATION OF PROPERTY—PROOF OF INCIDENTAL DAMAGES.

In a proceeding for the condemnation of a part of a tract of land, to authorize the court to submit to the jury the question whether the value of the part not taken was diminished by the taking, and, if so, to what extent, as an element of damages recoverable, there must ordinarily have been testimony on the subject from witnesses shown to have special knowledge or qualifications to enable them to form an intelligent and correct judgment, and the fact that the jury viewed the premises cannot dispense with such testimony.

2. SAME—INTEREST ON AWARD.

In a proceeding by the United States to condemn land for public purposes, brought in conformity to Rev. Laws Mass. c. 1, § 7, the rule of Bauman v. Ross, 167 U. S. 548, 17 Sup. Ct. 966, 42 L. Ed. 270, was applied, to the effect that the owner is not entitled to interest pending the proceedings, at least unless he proves that he has in fact suffered loss of the use of the land by reason thereof.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Domain, §§ 638-643.]

In Error to the District Court of the United States for the District of Massachusetts.

John D. Long and Joseph O. Burdett, for plaintiff in error.

Asa P. French, U. S. Atty., and William H. Garland, Asst. U. S. Atty. (Roscoe Walsworth, Sp. Asst. U. S. Atty., on the brief), for the United States.

Before COLT, PUTNAM, and LOWELL, Circuit Judges.

PUTNAM, Circuit Judge. This is a proceeding on the part of the United States for the condemnation of certain lands belonging to the town of Hingham, for the site, location, and construction of a naval magazine. The proceeding was authorized by Act April 27, 1904, c. 1622, 33 Stat. 324, 338. In support thereof an act was passed by the Legislature of Massachusetts (chapter 446, p. 398, of the Acts and Resolves of 1905), giving the consent of that state to the acquisition by the United States by condemnation of the lands in question for the purposes described in the statute of the United States which we have cited. This act ceded jurisdiction to the United States, and also all tide-water lands belonging to Massachusetts within the area to be acquired.

The petition for condemnation was filed in the District Court on August 7, 1905. This seems to have been the initiation of the pro-

ceedings, and it closes with a prayer to the effect that, on proof that the amount awarded had been paid by the United States, the court should enter a decree that the fee of the land and "all and every right, title, and interest in and to the same," should be vested in the United States. The case was tried to a jury, by which the verdict fixing the damages was rendered on the 1st day of November, 1907. A decree of condemnation was entered on December 7, 1907, which concluded as follows:

"It is now, to wit, on this 7th day of December, 1907, further ordered, adjudged, and decreed that upon the payment within 30 days after the date of this decree to the said town of Hingham of the sum of $10,500 damage, and its lawful costs in this proceeding, to be taxed by the clerk, or, upon the neglect or refusal of the said town of Hingham to receive said sums, then upon the payment of said sums into the registry of this court for the use of the said town of Hingham, the fee of said land hereinbefore described, and all easements, rights, and interests therein, be vested in the United States of America, to have, hold, possess, and enjoy for its use, forever."

There never has been any final order in accordance with the closing paragraph of the petition for condemnation, to the effect that, after payment of the award, the District Court would decree that the fee of the land be vested in the United States.

During the course of the trial the town reserved exceptions which make the basis of this writ of error. The facts are better stated by extracts from the bill of exceptions than otherwise, as follows:

"This was a proceeding for condemnation of a tract of about 750 acres of land in Hingham, and about 250 acres of land in Weymouth, for the purposes of a naval magazine, under the act of Congress approved April 27, 1904. The entire tract included in the petition for condemnation is shown upon a plan, entitled 'Plan Showing Ownership of Lands at Hingham and Weymouth, Taken by the United States of America for Purposes of a Naval Magazine, August, 1905,' which may be referred to in argument by either party.

"That portion of the respondent's land included within the tract sought to be condemned consisted of about 35⅓ acres, and was a part of the poor farm of said town. The remaining part thereof contained some 20 acres, and the poorhouse, barn, and other buildings for the accomodation and support of the town poor were situated thereon. The jury took a view of the land so taken and of the said remaining land, with the buildings thereon, and a plan showing both, and showing the contiguity and proximity of said remaining land to the land so taken for a naval magazine, was proved and put in evidence. Said plan is made a part of this bill, and may be referred to. Except as above, and the fact that the taking was for use as a naval magazine, no evidence was introduced tending to show damage to respondent's remaining land, or tending to show the proposed location of said naval magazine upon the tract, or its character or proximity to or distance from respondent's remaining land. Nor, except said view and plan, was there any evidence as to any diminution of accessibility to said remaining part by reason of said taking. The respondent requested the judge to rule that the jury, in considering the damage to the respondent's remaining land, might consider the damage resulting to it from the contiguity and proximity of said remaining land to the land condemned, and that the respondent's counsel might argue to the jury the damage so resulting."

The judge refused so to rule; but he, among other things, instructed the jury as follows:

"I instruct you, gentlemen, that you have no evidence before you which will warrant you in finding that the value of that part left has been dimin-

ished or made less in any other way. You have before you no evidence which would warrant you in concluding, from the mere fact that the part left will hereafter adjoin land taken for a naval magazine, that its value is thereby diminished by that fact alone."

This last ruling forms the basis of the first exception brought to our attention. The bill of exceptions proceeds further, as follows:

"The evidence showed that the town had made no use of the land taken since the filing of condemnation proceedings, to wit, August 7, 1905. It had before that permitted one Peterson to excavate and take away therefrom small amounts of sand gravel, of the value of about $200 a year. Peterson testified that previous to August 7, 1905, he had excavated some 3,500 tons, and had left it lying in a pile in the form of screenings. These he has taken away since said date.

"The United States had caused the land described in the petition to be surveyed, and monuments to be erected thereon, marking its boundaries. There was no other evidence tending to show an entry upon the land by the United States.

"The respondent asked the judge to instruct the jury that, having determined the amount of damage to the respondent as of the 7th of August, 1905, they should add thereto interest from that date to the date of their verdict, or such sum as would cover the loss of the use of the land in question between said dates, which request the court refused to give, but instructed the jury as follows:

"'I shall instruct you that there is no evidence here by which it could be found that the town has been deprived of the use of the land since August 7, 1905, and no evidence, therefore, upon which any interest should be awarded by you upon the amount of your verdict, when made up as of the date which I have named.'"

It thus appears that we have two questions. The first is whether there was evidence which the law regards as sufficient to enable the jury to ascertain whether the value of the part of the parcel not taken had been diminished by the taking, and, if "Yes," to what extent it had been so diminished. The other is whether interest from the time of the filing of the petition for condemnation to the time of the verdict of the jury should have been included in that verdict. As to the first question, it is plain that, unless there was evidence which enabled the jury to determine with a reasonable degree of definiteness to what extent the value of the part left had been diminished, it would have been useless for the jury to have undertaken to determine whether it had been in fact diminished. Therefore we have left only the question whether on such an issue, which is evidently more complicated than one merely of the value of land taken, a jury, which may be constituted in a major part, if not in the whole, of men who have no practical knowledge or experience, either as to the topic at large or as applicable to the particular locality involved, can dispose of it without the assistance of the testimony of persons of some skill in either one or both directions. In view of the fact that the parties, and especially the court, are not assumed to know whether or not a jury selected in the ordinary manner may contain a single person capable of forming a valuable judgment on a topic of that kind, it must be apparent that a verdict given without such assistance would be entirely in the air; and it is also apparent that, without some evidence of that character, the court would be wholly incapable on a motion for new trial, or for a reduction of damages, of forming any

judgment on the question whether the amount awarded was unjust, or even absurdly so. As to witnesses on an issue of this character, the rule is so thoroughly settled that they must be shown to be qualified in order to render their opinions of value that we need not enlarge on it, unless, perhaps, to cite the general language found in section 437 of Lewis' Eminent Domain (2d Ed.), that:

"Such a witness must appear to have some peculiar means of forming an intelligent and correct judgment beyond what is presumed to be possessed by men generally."

It seems to follow, therefore, as a necessary conclusion, that the law will not substitute jurymen, who may be wholly inexperienced, in lieu of witnesses on a topic of this character, thus nullifying the fact that as to witnesses it always requires a certain amount of special knowledge on the part of those who testify. It strikes the judicial mind, accustomed to trials of issues of fact, that in this case no substantial proof was offered on this particular issue.

The town of Hingham fails to cite any authorities supporting its position, except that it relies on Parks v. Boston, 15 Pick. (Mass.) 198, 209, 210, 211. We are unable to perceive that this gives the town any support. The real pith of the case is that it sustained the rulings of the trial court, on page 199, and it had no occasion to go further. It appeared there that witnesses had been called on the topic, and the court instructed the jury that, having heard the witnesses and enlightened their consciences as fully as they could, they must give a verdict according to their own opinions and convictions. Such is the customary rule, and it cannot be questioned. Then the court cautioned the jury that, if any one of them had any peculiar knowledge, he should disclose it, and testify to it in court. It also instructed the jury that they were entitled to take counsel of their own experience and knowledge of like subjects, and should consider, not only what the witnesses testified to, but what they had seen in the view which they had taken, and that, if witnesses had sworn to matters of opinion which the jurors, in the exercise of their good sense, did not believe to be correct, they should disregard such testimony. All these things are within the ordinary rules constantly given by the courts to juries, as confirmed by Shoemaker v. United States, 147 U. S. 282, 303, 305, 306, 13 Sup. Ct. 361, 37 L. Ed. 170; and, so far as the case related to the topic now brought to our attention, the opinion of Mr. Chief Justice Shaw, when he spoke in behalf of the court, merely sustained what we have cited. It is true that the opinion seemed to attach special weight to the knowledge acquired by the view because the case related to an estimate of damages; and so the Chief Justice, in speaking for himself alone, observed that he could see no reason why the jury might not estimate the damages without any evidence aliunde. It must be borne in mind here, however, that Parks v. Boston related entirely to estimating the value of the land taken, which is a far less complicated proposition than that before us, where the question with reference to the effect of taking a portion of a parcel of land on the remaining portion depends, of course, on a large range of circumstances, which no ordinary juryman, and also no man not

experienced, can be assumed to take into account and properly weigh. Nevertheless, the only question before the court was the correctness of what appeared at page 199, which, as we have explained, was clearly in accordance with common rules.

As to the question of interest, we refer again to Parks v. Boston, which leads up to the other propositions which we need to consider, in that, at page 206 et seq., the opinion insists on, and reiterates and illustrates, the rule that the value of the land taken is to be estimated as of the time of taking. Such being the fact, it would seem to follow that the obligation to make compensation for the land arises prima facie as of the time of taking, so that, therefore, according to the ordinary rules, it should carry interest from that time. It is true that, under the provisions of many Constitutions, and also in accordance with the terms of the pleadings and judgment of condemnation in this case, title is not wholly divested out of the owner until payment is made; but, on fundamental principles, when the title does completely vest, it is as of the time when the taking occurred. In other words, the well-known rule thus explained in Parks v. Boston usually, in Massachusetts, determines the point as of which all the rights of the parties are ultimately fixed. There may be exceptional cases, as was pointed out by us in United States v. Nahant, 153 Fed. 520, 525, 82 C. C. A. 470. The general rule was recognized in Old Colony Railroad Company v. Miller, 125 Mass. 1, 3, 28 Am. Rep. 194, and in Drury v. Midland Railroad Company, 127 Mass. 571, 585. Indeed, this is carried to such an extent that in Imbescheid v. Old Colony Railroad Company, 171 Mass. 209, 50 N. E. 609, the owner was held entitled to interest, although he remained in possession of the lands and took the rents, leaving the corporation which exercised the right of eminent domain to recoup by subsequent suit. This was reaffirmed in Pegler v. Hyde Park, 176 Mass. 101, 57 N. E. 327. In United States v. Nahant, already referred to, we refused to apply so technical a rule, in view of the fact that the town remained in full enjoyment of the use of what was there taken by condemnation, and in view, further, of the fact that the amount of compensation was the cost of reproducing what was taken, rather than any market value, and in view, further, that what was taken had not been reproduced. Consequently we relieved the United States from the payment of interest. We thus practically balanced the matter in accordance with the suggestions of Shoemaker v. United States, 147 U. S. 282, 321, 13 Sup. Ct. 361, 37 L. Ed. 170, already cited. In fact, in United States v. Nahant, the United States claimed no rule other than that which we have said is customary in the state of Massachusetts.

In the present case, however, the United States call our attention to a line of decisions of the Supreme Court, culminating in Bauman v. Ross, 167 U. S. 548, 598, 17 Sup. Ct. 966, 42 L. Ed. 270, to the effect that the payment of damages and the vesting of title in the United States are to be contemporaneous, and that consequently the owner is not entitled to interest pending the proceedings assessing them. Inequitable as it may be that any public authority should be enabled to tie up the lands of any person or corporation for some consider-

able time, pending proceedings in litigation, in such a way that the owner is barred from disposing of them as his own, we find that we must sustain the position of the United States on this proposition. The proceedings here were taken in conformity with the statutes of Massachusetts by virtue of Act Aug. 1, 1888, c. 728, 25 Stat. 357 (U. S. Comp. St. 1901, p. 2516), which provides that the proceedings shall conform as near as may be to the practice existing in like causes in the courts of record within the state where the land is situated. The petition for condemnation which we have described was consequently framed on section 7 of chapter 1 of Revised Laws of Massachusetts, from which section was derived the provision in the petition, and in the judgment of condemnation, that, if the appraisal was paid within one month, the fee should vest in the United States. Under a similar state statute, passed expressly to authorize taking the land where the Post Office Building at Boston is now situated, and which statute is set out at large in the margin of Burt v. Merchants' Insurance Company, 115 Mass. 1, the ordinary rule that the value of the land is to be estimated as of the time of taking, and not as of the time of trial, was reaffirmed; but, at page 14, it was observed that the effect of provisions like that which we have cited from the Revised Laws was that the final decision on the question of compensation fixed the time when the compensation should be paid, and the title vest in the United States. What is more peremptory are Edmands v. Boston, 108 Mass. 535, 551, and Norcross v. City of Cambridge, 166 Mass. 508, 44 N. E. 615, 33 L. R. A. 843, to the effect that, where a statute provides that damages shall not be paid until the land has been entered upon, and possession taken, without any provision for compensation for delay in payment, the ordinary rule as to interest does not apply, and interest is not payable until the money becomes due, and that the Constitution of Massachusetts permits this, unless the owner proves that he has been put to trouble or expense, or incurred loss of the use of his land, not considered in assessing the damages. There is no evidence here of anything of that nature; and, therefore, for aught we can see, we must hold that the rulings of the District Court were correct.

The judgment of the District Court is affirmed.