CATHERINE M. CONNOR & another *vs.* METROPOLITAN DISTRICT WATER SUPPLY COMMISSION (and a companion case [1]).

Suffolk.   November 12, 1940. — May 25, 1943.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & DOLAN, JJ.

*Constitutional Law*, Equal protection of laws, Eminent domain. *Damages*, For property taken or damaged under statutory authority. *Eminent Domain*, Damages. *Metropolitan District Water Supply Commission*. *Words*, "Before the taking."

The provision of § 5 of St. 1927, c. 321, which did not give an owner of land in New Salem, not taken nor purchased for the Wachusett reservoir nor within one mile of the flowage line thereof when filled, any right to recover damages due to decrease in the value of the land and of a business conducted thereon, but did give such right to an owner of land or a business situated within such mile, did not unconstitutionally deny the first mentioned owner equal protection of the laws.

---

[1] The companion case is by Guy L. Marvell against the commission.

An owner of land which was taken in 1938 for reservoir purposes under St. 1927, c. 321, who had not complained of the delay by the commission for the period between the passage of the statute and the date of the taking, was not entitled to contend that he had suffered from unconstitutional discrimination even if he was not given compensation for alleged injury resulting from his being limited in beneficial use of his land and in carrying on his business thereon by reason of its impending submergence and from diminution of the fair market value of his land and of the business during that interval.

Two BILLS IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on September 25, 1939.

The prayers of the first bill as amended were for a determination of the damages suffered by the plaintiffs through the violation of their constitutional rights by alleged wrongful acts of the defendants, and that the defendants be permanently enjoined from further acting under St. 1927, c. 321, until the plaintiffs were paid damages they alleged to be due them.

The prayers of the second bill as amended were for a determination of the damages suffered by the plaintiff in his property and in his business by the failure of the defendants to take so much of his land as would be submerged by the dams constructed by them within a reasonable time after the location and heights of such dams had been officially determined by them, and that they be permanently enjoined from further acting under authority of the statute until the plaintiff had been paid the amount of damages claimed.

The cases were reserved by *Dolan,* J., for determination by the full court.

*J. I. Robinson & P. Nichols,* (*J. R. Nolen* with them,) for the plaintiffs.

*E. O. Proctor,* Assistant Attorney General, for the defendants.

LUMMUS, J.    By St. 1926, c. 375 the defendant commission was established, and was empowered to divert into the Wachusett reservoir the flood waters of the Ware River and its tributaries, and to take lands, water rights and other property in the watersheds of the Ware and Swift rivers. The foregoing statute was supplemented by St. 1927, c. 321, which extended the waters to be diverted into the reservoir,

and the lands, water rights and other property that might be taken.  It was provided (§ 5) that a justice of this court might appoint a board of three referees for the determination of damages under the statute, subject to review by the court in matters of law.  See *Maher* v. *Commonwealth,* 291 Mass. 343.

Both statutes provided (St. 1926, c. 375, § 5; St. 1927, c. 321, § 4) that all takings and all proceedings in relation to or growing out of the same shall conform to G. L. c. 79 except in certain particulars.  By St. 1927, c. 321, § 5, provision was made as follows: "Any person or corporation owning at the time of the passage of this act any real estate which is not taken or purchased for the reservoir or the protection of the waters thereof under the provisions of this act situated within the territory comprised in the towns of Dana, Enfield, Greenwich and Prescott or within those portions of the towns of Belchertown, Hardwick, Pelham, Petersham, New Salem, Shutesbury and Ware not more than one mile distant from land required to be purchased or taken in fee under the second paragraph of section four of this act which real estate is decreased in value by the carrying out of the provisions of this act, or any person or corporation owning at the time of the passage of this act an established business on land within territory defined in this paragraph, which business is decreased in value, whether by loss of custom or otherwise, by the carrying out of the provisions of this act shall be entitled to recover damages in the manner hereinafter provided in this section.  The commission, however, in its discretion, if it finds that any such person or corporation has an established business located near to but outside the areas defined in this paragraph which has been actually decreased in value by the carrying out of the provisions of this act and which person or corporation would have been entitled to damages under this section if located within the areas defined in this paragraph, may make such settlement by agreement with such person or corporation as it may deem just, but only upon the filing of a claim therefor within the time hereinafter provided in this section."

The plaintiffs in the first case, Catherine M. Connor and Mary F. Vaughan, filed with the commission a sworn statement of their claims, under St. 1927, c. 321, § 5. They owned a farm and a telephone business in New Salem, carried on upon land not taken or purchased. The value of the farm and telephone business was greatly decreased by the depopulation of the neighboring territory as a result of the submerging of it beneath the waters of the reservoir. Their claims were heard by the board of referees, which found that the established business of the plaintiffs had been injured to the amount of $4,200, but denied them damages because their land was not within one mile of the flowage line of the reservoir when filled.

The plaintiffs Connor and Vaughan then brought the present bill of complaint in this court, on the grounds that their property was appropriated without compensation, and that the statute discriminated against them by making an arbitrary distinction between their land and land situated nearer to the reservoir. A single justice reserved the case for the full court.

The material constitutional provision, apart from the less direct provisions of the Fourteenth Amendment to the Constitution of the United States, *Chicago, Burlington & Quincy Railroad* v. *Chicago*, 166 U. S. 226, is art. 10 of the Declaration of Rights, which provides that "whenever the public exigencies require that the property of any individual should be appropriated to public uses, he shall receive a reasonable compensation therefor." In *Callender* v. *Marsh*, 1 Pick. 418, it was held that there was no right to damages for lowering the grade of a street in front of the plaintiff's house. It was said (page 430) that the article just quoted "has ever been confined, in judicial application, to the case of property actually taken and appropriated by the government," and (page 432) that "the location of schoolhouses upon public land may materially diminish the value of an adjoining or opposite dwellinghouse, on account of the crowd and noise which they usually occasion; but it cannot be imagined, that the public are obliged to consult the convenience of the individual so far as to abstain from erecting the schoolhouse, or to pay the owner of the dwellinghouse for its diminished

value. These are cases of *damnum sine injuria*, and though proper for the favorable interposition of the community for whose benefit the individual suffers, they do not give a right to demand indemnity, by virtue of the above cited article in the Declaration of Rights." And it was suggested (page 434) that "it might be proper for the legislature, by some general act, to provide that losses of the kind complained of in this suit should be compensated." See also Rev. Sts. (1836) c. 25, § 6; *Burr* v. *Leicester*, 121 Mass. 241.

In accordance with that case, it is settled that an owner whose land is not taken cannot obtain compensation for the incidental injury to that land, or to a business conducted upon it, by a public work, unless the statute so provides. *Lincoln* v. *Commonwealth*, 164 Mass. 368, 374. *Earle* v. *Commonwealth*, 180 Mass. 579. *Sawyer* v. *Metropolitan Water Board*, 178 Mass. 267. *Sawyer* v. *Commonwealth*, 182 Mass. 245. *Nashua River Paper Co.* v. *Commonwealth*, 184 Mass. 279. *Beaman* v. *Commonwealth*, 304 Mass. 443. *Richards* v. *Washington Terminal Co.* 233 U. S. 546.

The statute in the present case (St. 1927, c. 321, § 5) provides that the owner of land not taken or purchased situated in Dana, Enfield, Greenwich or Prescott, or in other towns named including New Salem within one mile of land required to be purchased or taken for submerging by the reservoir, which land is decreased in value by the proposed work, or the owner of an established business on land within the same territory which is decreased in value thereby, may recover damages therefor as of right. The plaintiffs Connor and Vaughan contend that the statute is unconstitutional because it discriminates against them by making an arbitrary distinction between their land and land situated nearer to the reservoir. It appears from §§ 13 and 14 that the corporate existence of Enfield, Greenwich and Prescott was to be terminated. By St. 1938, c. 240 the corporate existence of Dana was terminated. It is a fair inference that substantially all of those towns was to be submerged. Unless damages were to be given for injury to land not taken, or to business conducted on land not taken, without territorial limits, the line had to be drawn somewhere. The territorial

limits set by the statute do not, in our opinion, deny to the plaintiffs "the equal protection of the laws" within the Fourteenth Amendment to the Constitution of the United States, and the comparable provisions of arts. 1, 6, 7 and 10 of the Massachusetts Declaration of Rights. In *Metropolitan Casualty Ins. Co.* v. *Brownell*, 294 U. S. 580, 584, it was said that "A statutory discrimination will not be set aside as the denial of equal protection of the laws if any state of facts reasonably may be conceived to justify it." See also the cases collected in a note to *Louisville Gas & Electric Co.* v. *Coleman*, 277 U. S. 32, 42; *Commonwealth* v. *Hubley*, 172 Mass. 58; *Whiting* v. *Commonwealth*, 196 Mass. 468; *Commissioner of Corporations & Taxation* v. *Coöperative League of America*, 246 Mass. 235, 239; *Ayer* v. *Commissioners on Height of Buildings in Boston*, 242 Mass. 30, 36; *Brest* v. *Commissioner of Insurance*, 270 Mass. 7, 14, 15, 16; *Howes Brothers Co.* v. *Unemployment Compensation Commission*, 296 Mass. 275, 287, 288. In *Burnett* v. *Commonwealth*, 169 Mass. 417, 425, it is said: "If the statute secures to the plaintiffs the payment of reasonable compensation for the taking of their property, according to the requirements of our Constitution, and if the provisions are the same for all persons whose lands in the same locality are taken for the same use, the statute cannot be deemed to be in violation either of the Constitution of Massachusetts or of that of the United States, because more favorable provisions for compensation have been made for persons whose lands and property are taken or injured in other localities where the damages are or reasonably may have been thought by the Legislature to be other or greater than those suffered by the plaintiffs." In *Nashua River Paper Co.* v. *Commonwealth*, 184 Mass. 279, 282, 283, and in *Beaman* v. *Commonwealth*, 304 Mass. 443 (the latter case arising under the statute before us), territorial limits to the recovery of damages were applied.

The second case is a similar bill of complaint brought by Guy L. Marvell, the owner of land in Dana (now annexed to Petersham) on which land he had an established business. Part of his land was taken, and he has been awarded damages

therefor. He accepted the award with the stipulation that he "does not waive any rights that he may have that are applicable to this case, in the event that the Supreme Judicial Court of the Commonwealth declares that the aforesaid act [St. 1927, c. 321] is in fact unconstitutional." It was agreed that "During the interval between the passage of Chapter 321 of the Acts of 1927 and March 24, 1938, by reason of the impending submergence of his land, the petitioner was greatly damaged in his property by being limited in the beneficial use of his land and in the carrying on of his business thereon without constant fear of interruption; and during said interval, for the same reason, the fair market value of his real estate and of the business carried on thereon, substantially depreciated and diminished." It was agreed that "A portion of the land is now submerged and in the course of time the whole or a greater portion thereof will be submerged."

This plaintiff's complaint is that the defendant commission determined to take his land as early as October 1, 1926, but did not actually take it until March 24, 1938, with the result that during the interval the value of his land and business was decreased because of the impending submerging of his land. He contends that the failure to provide damages for such loss of value was a violation of art. 10 of the Massachusetts Declaration of Rights and the Fourteenth Amendment to the Constitution of the United States. He contends that he suffered a two-fold injury, "first, in limiting him in the beneficial use of his land for many years, and second, in deferring the date as of which compensation was to be determined until the fair market value of his land had substantially diminished."

By St. 1926, c. 375, § 5, and St. 1927, c. 321, § 4, the takings were made to conform generally to G. L. c. 79, § 12, under which the damages for land taken shall be fixed at the value thereof before the taking. A reference to an earlier form of the statute shows that the words "before the taking" are not limited to the taking of the particular land, but mean "before such laying out, relocation, alteration, widening, grading or discontinuance"; in other words,

before the beginning of the entire public work which necessitates the taking. R. L. (1902) c. 50, § 3. St. 1918, c. 257, § 187, inserting R. L. c. 48A, § 12. 1 Preliminary Report of the Commissioners to Consolidate & Arrange the General Laws (1918) 22, 23. In the report last cited it was said that the meaning of the words "before the taking" is that "damages shall be based upon the value of the land unaffected by the improvement." That was the rule established by judicial decision even before the statute. *Dorgan* v. *Boston*, 12 Allen, 223, 231. *Benton* v. *Brookline*, 151 Mass. 250, 257, 258. *May* v. *Boston*, 158 Mass. 21, 29, 30. *Bowditch* v. *Boston*, 164 Mass. 107, 111. *Mowry* v. *Boston*, 173 Mass. 425. *Smith* v. *Commonwealth*, 210 Mass. 259, 263. *Olson* v. *United States*, 292 U. S. 246, 256. *United States* v. *Miller*, 317 U. S. 369, 375. *St. Louis Electric Terminal Railway* v. *MacAdaras*, 257 Mo. 448. *Brainerd* v. *New York*, 74 Misc. (N. Y.) 100. Furthermore, the intent of the Legislature that there be compensation for the decrease in value between 1926 and 1938 appears in the specific provisions respecting compensation in the special act covering the takings, considering those provisions together. St. 1927, c. 321, §§ 4, 5, 6. Section 4 contains provisions regarding land taken and makes no express reference to such a decrease in value. Section 5 provides compensation for a decrease in value where the land is not taken. Section 6 provides that a decrease in value shall be taken into account in assessing damages where the owner of land to be taken deals with the commission. The conclusion is justified that the Legislature meant to allow similar compensation under § 4, by implication.

The plaintiff Marvell also objects that he will not be compensated for damage resulting from the impairment of his business on the land from 1926 to 1938. That the Legislature intended compensation for such damage is clear. Section 5 of the special act provides such compensation where the land is not taken. Section 6 provides such compensation where the land is taken and the referees determine the damages. Section 4 makes no explicit provision for such compensation where the land is taken. Sections 5 and

6, however, are to be read with § 4. If the plaintiff's phrase "beneficial use of his land" has a wider meaning than business use, and includes personal enjoyment, it does not appear that the statute helps him as to the latter.

Even if no compensation was provided by the statute for business losses, there is no constitutional necessity for compensation for such damages. It is well established that, when property is taken, the owner need not be compensated for the good will of his business and general business losses. *Edmands* v. *Boston,* 108 Mass. 535, 549. *Williams* v. *Commonwealth,* 168 Mass. 364, 367. *Bailey* v. *Boston & Providence Railroad,* 182 Mass. 537, 539. *Boston Belting Co.* v. *Boston,* 183 Mass. 254, 259. *Nashua River Paper Co.* v. *Commonwealth,* 184 Mass. 279, 281. *Allen* v. *Commonwealth,* 188 Mass. 59, 61. *Whiting* v. *Commonwealth,* 196 Mass. 468, 470. *Bothwell* v. *United States,* 254 U. S. 231, 232. *Mitchell* v. *United States,* 267 U. S. 341, 344.

The plaintiff Marvell contends that the delay in taking the land made a denial of compensation for business losses unconstitutional. It may be that there was an unreasonable delay in making the taking, for in 1931 it became reasonably certain that the whole or the greater part of the land of the plaintiff would be within the flow line. But it does not appear that the plaintiff complained of the delay. Courts have granted relief where condemnation proceedings have been unreasonably prolonged and are finally abandoned. *Winkelman* v. *Chicago,* 213 Ill. 360. *McLaughlin* v. *Municipality No. Two,* 5 La. Ann. 504. *Mayor & City Council of Baltimore* v. *Black,* 56 Md. 333. *Simpson* v. *Kansas City,* 111 Mo. 237. But if there is no remonstrance or complaint by the condemnee, the public authorities are justified in concluding that no one is being damaged, and cannot be charged with negligence or bad faith in the delay. *Black* v. *Mayor & City Council of Baltimore,* 50 Md. 235. *Mayor & City Council of Baltimore* v. *Black,* 56 Md. 333. *Smith* v. *Erie Railroad,* 134 Ohio St. 135. The use of the land until the taking is effected "is deemed by the law to be sufficient compensation to the owner for the delay in assessing damages." *Mayor & Aldermen of Taunton, petitioners,* 290 Mass. 118, 122, 123. In our

opinion the plaintiff Marvell has no constitutional right to further damages.

In each case a decree is to be entered dismissing the bill.

*Ordered accordingly.*