**UNITED STATES v. 40,379 SQUARE FEET OF LAND, MORE OR LESS, IN CITY OF NEWTON, MIDDLESEX COUNTY, MASS., et al.**

No. 6728.

District Court, D. Massachusetts.

Nov. 17, 1944.

Edmund J. Brandon, U. S. Atty., and Philip P. A. O'Connell, Sp. Asst. U. S. Atty., both of Boston, Mass., for plaintiff.

C. Keefe Hurley and Joseph E. Casey, both of Boston, Mass., for defendants N. L. Steffens and others.

C. Keefe Hurley, of Boston, Mass., for defendant Anna L. Steffens.

Hugh S. Boyd, of Newton, Mass., for defendant North Congregational Church.

WYZANSKI, District Judge.

May 26, 1943, the Government, expressly acting under the authority of § 201 of the Second War Powers Act of March 27, 1942, c. 199, 56 Stat. 176, 177, 50 U.S.C.A. Appendix, § 632, which incorporates by reference the Act of August 1, 1888, c. 728, 25 Stat. 357, 40 U.S.C.A. §§ 257, 258, filed in this Court a petition for the condemnation of 29-41 Chapel Street, Newton, Massachusetts. That property was then owned by a nominee of Steffens. The property was subject to certain liens not now material. Part of it was rented by Steffens to Raytheon Production Company; another part was used by Steffens as a storage warehouse where he kept in cubicles goods stored by his clients. The petition sought immediate possession of the entire property, but was not accompanied by any deposit of funds. On the same day, Judge Sweeney caused the entry of an order authorizing the Government through a designated officer to take immediate possession of the property; that officer took posses-

sion forthwith; and on May 29, 1943 a deputy marshal of this Court served notice of the order by delivering a copy of the order to N. L. Steffens and by posting another copy on the premises. Thereafter Steffens did not collect rent. By July 1, 1943 Steffens had moved from the premises his personal property, his clients' goods, and the cubicles in which the clients' goods were stored. R. 137, 148 Ex. 10.

August 2, 1943, the Government, expressly acting pursuant to §§ 1, 2 and 4 of what is commonly called The Declaration of Taking Act of February 26, 1931, c. 307, 46 Stat. 1421, 40 U.S.C.A. § 258a et seq., filed in this Court a declaration of taking of the same property. This declaration was accompanied by a deposit of $30,800. On the same day Judge Ford caused the entry of a judgment decreeing that title to the property was vested in the Government.

November 6, 1944 a jury returned a special verdict to the effect that: (1) as of both May 26, 1943 and August 2, 1943 the fair market value of the property at 29-41 Chapel Street, excluding cubicles and egresses, was $45,180; (2) that on the same dates the egresses were valueless and the cubicles were worth $5,820; (3) at the time the cubicles were installed the then landlord and tenant both intended the cubicles to be part of the real estate; (4) the owner sustained damages of $5,500 from being forced to move from 29-41 Chapel Street the goods which were being stored there by his clients on May 26, 1943; and (5) the fair market value for the use and occupancy of 29-41 Chapel Street for the period from May 26, 1943 to August 2, 1943 was $1,500.

These questions of law are presented: (1) in estimating the value of the property was the jury justified (a) in including $5,820 on account of the cubicles and (b) in not giving any value to the egresses; (2) is the claimant entitled to damages on account of his expenses incurred in moving his clients' goods from Chapel Street; (3) in addition to $45,180 is the claimant entitled to $1,500 or to interest, and if so, at what rate.

■ First: (a) The cubicles were in the nature of walls. They were affixed by thousands of nails to the building; and their removal would cause obvious defacement and discoloration of the remaining structure. In view of these physical facts and the jury's finding as to the intention of the landlord and tenant at the time of in-

stallation of the cubicles, the cubicles were, as a matter of law, fixtures and were part of the real property on May 26, 1943. Moreover, prior to May 26, 1943 Steffens' nominee had acquired both the prior lease and the reversion and merged them, so that the cubicles on the premises became even more clearly a part of the real property. Thus, if the Government had taken title to the property as of May 26, 1943 the jury would have been justified in including $5,820 on account of the cubicles. But the Government, as is explained more fully in the third part of this opinion, never acquired title on or as of May 26, 1943 under the Act of August 1, 1888, 40 U.S.C.A. §§ 257, 258 or under any other act. It acquired title solely under the Declaration of Taking Act, 40 U.S.C.A. § 258a et seq., and as of August 2, 1943. By that date the cubicles were no longer a part of the real property. The Government never had the use of those cubicles and never had title to them. Their value should not be included in any judgment in this case.

■ (b) The egresses were structures added to the building by a particular tenant for its purposes. The jury took a view of these structures. The jury could reasonably have believed that the egresses were useless except for the particular tenant; were unsightly; and added nothing to, and perhaps subtracted from, the market value of the property. Thus the jury was justified in not giving any value to the egresses.

Second: When the Government took possession of the Chapel Street property Steffens had in storage goods belonging to his customers. He moved them to another site at a loss to himself which the jury has found to be $5,500. There is no showing that Steffens was under a legal obligation to his customers to move their goods. In transporting the goods, Steffens apparently acted as a volunteer, motivated by the hope that he could carry on his storage business at a new site.

■ The loss incurred in this undertaking is similar to the business loss which the ordinary occupier of business property sustains when his property is taken by the Government. The ordinary occupier loses the business good will which is associated with the particular premises. For his business protection he may choose to build up through commercial effort, advertising or other ways a comparable good will for another site. Steffens lost the special ad-

vantage of having his customers' goods on the Chapel Street property. For his business protection he had to build up through moving expenses and other ways a comparable store of goods on another site. The obligation of the Government to pay just compensation to an owner of property taken by paramount authority does not include an obligation to recompense him for the loss of his business opportunities or for the losses his business incurs through being forced to move. United States ex rel. T.V.A. v. Powelson, 319 U.S. 266, 281–283, 63 S.Ct. 1047, 87 L.Ed. 1390; Bothwell v. United States, 254 U.S. 231, 41 S.Ct. 74, 65 L.Ed. 238; Gershon Bros. v. United States, 5 Cir., 1922, 284 F. 849; Parcels of Land in City of Philadelphia v. United States, D.C.E.D.Pa., 57 F.Supp. 768; Connor v. Metropolitan Dist. Water Supply Comm., 314 Mass. 33, 41, 49 N.E.2d 593. If General Motors Corp. v. United States, 7 Cir., 140 F.2d 873 be to the contrary, I decline to follow it. As Mr. Justice Douglas said in Powelson's case, pages 281, 282 of 319 U.S., page 1055 of 63 S.Ct., 87 L.Ed. 1390: "There are numerous business losses which result from condemnation of properties but which are not compensable under the Fifth Amendment. * * * the sovereign must pay only for what it takes, not for opportunities which the owner may lose. * * * 'Frustration and appropriation are essentially different things.'" From these principles it follows that Steffens cannot recover the expense of moving his customers' furniture, regardless of whether his motive was merely to re-establish his business or whether he was under a legal obligation to move his clients' goods out of the way. In either event the furniture storage business was not "taken" by the Government and need not be paid for by the Government.

Third: The most difficult question in this case is what, in addition to the $45,180 (found by the jury to be the value of the property excluding cubicles and egresses) is the owner entitled to recover on account of (a) the period from May 26, 1943 through August 1, 1943, an interval during which the Government occupied the property but had neither made a deposit in Court nor acquired title to the property, and (b) the period from August 2, 1943 when the Government deposited $30,800 in Court and acquired title until the day judgment shall be entered in this controversy.

█ Some of the difficulty arises from the ambivalent procedures adopted by the Government. First on May 26, 1943 it utilized the Act of August 1, 1888, c. 728, 25 Stat. 357, as amended by the Act of March 3, 1911, c. 231, § 291, 36 Stat. 1087, 1167, 40 U.S.C.A. §§ 257, 258, to file a petition for condemnation and to secure an order for immediate possession. Then on August 2, 1943 it utilized the Declaration of Taking Act of February 26, 1931, c. 307, 46 Stat. 1421, 40 U.S.C.A. § 258a et seq. to file a declaration of taking, to make a deposit of $30,800, and to secure an order recognizing the Government's title. There is no legal obstacle to the Government's course in adopting these two procedures in succession. Section 4 of the Declaration of Taking Act of February 26, 1931, c. 307, 46 Stat. 1421, 1422, 40 U.S.C.A. § 258d. But the practical consequence is that the two periods referred to in the preceding paragraph are governed by somewhat variant legal rules.

As to the period from May 26 through August 1, 1943, three contentions might be made: (1) that the owner is entitled to receive $1,500 which the jury has found to be the value of the use and occupancy of the premises during that period; (2) that he is entitled to receive for that period interest on $45,180 at 4% in accordance with Massachusetts G.L. (Ter.Ed.) c. 79, § 37; or (3) that he is entitled to receive for that period interest on $45,180 at 6%.

█ In resolving these contentions, the starting point is the Act of August 1, 1888, already cited. That statute directs that in condemnation cases brought pursuant to its terms in the United States Courts the modes of proceeding shall conform as near as may be to the local state practice. Section 2 of the Act of August 1, 1888, 25 Stat. 357, 358, 40 U.S.C.A. § 258. This means that state rules determine how title is acquired and as of what date title is acquired and property is valued. Turner v. Woodard, 1 Cir., 259 F. 737, 740, 741; Town of Hingham v. United States, 1 Cir., 161 F. 295, 15 Ann.Cas. 105. But state rules as to whether interest or a sum on account of use and occupancy is payable, and if so, at what rate, are only persuasive rather than controlling (Brown v. United States, 263 U.S. 78, 87, 44 S.Ct. 92, 68 L.Ed. 171; see Danforth v. United States, 308 U.S. 271, 285, 60 S.Ct. 231, 84 L.Ed. 240; United States v. Rogers, 255 U.S. 163, 169, 41 S.Ct. 281, 65 L.Ed. 566), inasmuch as those are substantive questions grounded upon the United States Con-

stitution. See United States v. Miller, 317 U.S. 369, 380, 63 S.Ct. 276, 87 L.Ed. 336.

■ Under the law of Massachusetts the United States did not acquire title to 29-41 Chapel Street when it filed its petition for condemnation on May 26, 1943. Burt v. Merchants' Insurance Co., 115 Mass. 1, 13; Sherwin v. Wigglesworth, 129 Mass. 64, 65; Turner v. Woodard, supra; Town of Hingham v. United States, supra. Even though pursuant to an order of this Court, the United States took immediate possession of the property, the Government did not then acquire title or become irrevocably bound to acquire it. Mass. G.L. (Ter.Ed.) c. 79, § 44; Turner v. Woodard, supra; Commercial Station Post Office v. United States, 8 Cir., 48 F.2d 183, 184–186. It was not until August 2, 1943 when it filed a declaration of taking under the 1931 Act that the Government acquired title.

■ Since under local law the Government did not acquire title on May 26 or on any date between then and August 2, 1943, it follows that under the United States Constitution the Government's obligation for the period from May 26 through August 1, 1943 is only to pay for the use and occupancy of the Chapel Street property.

The question of what is fair compensation for such a use is not novel. Where the Government first occupied property, then filed under the 1888 Act a petition for condemnation and finally acquired title pursuant to the petition, it has been held that the United States Court may properly award as compensation for the initial occupation interest at the local rate on the amount at which the property was valued for the purpose of the taking. United States v. Rogers, 255 U.S. 163, 169, 170, 41 S.Ct. 281, 65 L.Ed. 566. The same principle has been invoked where the Government first filed a petition for condemnation and then took possession. Commercial Station Post Office v. United States, supra. And other somewhat comparable cases may be found. Seaboard Air Line Ry. v. United States, 261 U.S. 299, 306, 43 S.Ct. 354, 67 L.Ed. 664.

Rogers' case does not, however, absolutely control the case at bar. First, here the period of advance possession preceded not a taking under the 1888 Act, but a taking under the 1931 Act. Second, Rogers' case and the others just cited do not purport to lay down an inflexible rule; they approve various lower courts' decisions to award as compensation for advance use of the property interest at the local rate; they do not disapprove the use of another rate of interest or the allowance of a sum specifically ascertained by the jury as its valuation of the use and occupancy during the interim period.

There is no compelling reason to refuse to apply the Rogers doctrine because in the case at bar the ultimate taking was under the 1931 Act instead of under the 1888 Act. It was perhaps due to accident or confusion that this proceeding began under the 1888 Act; some harassed official in wartime Washington in searching for an appropriate gambit probably stumbled on § 258 in Title 40 and did not read on to § 258a where he would have found the 1931 Act. And it was perhaps due to accident or confusion that another harassed official determined to add to the petition under the 1888 Act a declaration under the 1931 Act. So far as concerns the value of the advance use of the property between May 26 and August 2, 1943, it is of no moment under what statute the Government ultimately took title.

But there remains the question whether in view of the fact that the Rogers' rule is optional, another rule can be applied which would work more fairly in this case. See Norcross v. Cambridge, 166 Mass. 508, 511, 44 N.E. 615, 33 L.R.A. 843; Edmands v. Boston, 108 Mass. 535, 551.

There has already been a tendency in this District not to adhere strictly to the rule approved in the Rogers case. Under the precise terms of that rule in a condemnation case arising under the 1888 Act where damages are assessed as of the date of the petition, this Court should award for the period of advance possession interest only at the local rate, which since Mass.St. 1918, c. 257, subs. 37, has been 4%. Mass. G.L. (Ter.Ed.) c. 79, § 37. See Norcross v. Cambridge, 166 Mass. 508, 511, 44 N.E. 615, 33 L.R.A. 843. Yet, according to the recollection of the clerk and his deputies, judges of this Court have generally charged the jury, and also directed the clerk's office, that where land was taken under the 1888 Act and an allowance was made for advance possession, the allowance should be computed as though it were interest at 6%. See charge of Judge James M. Morton in United States of America v. Certain Lands in Chatham,[1] Civil 1984 (1923). In recent

---

[1] No opinion for publication.

years the judges of this Court may have thought the figure 6% fair in the light of the Congressional determination that 6% was the rate to be applied where there was a taking under the 1931 Act and the deposit fell short of the requisite amount. In earlier years the judges may have thought that while not unprecedented (see United States v. A Certain Parcel of Land, D.C.S. D.Ga., 47 F.Supp. 30, 33) the 4% rate was so much lower than the going rate throughout the nation that it more clearly reflected Yankee thrift than national protection under the Bill of Rights.

■ Taking into account what other judges have done in other cases in this District I have no hesitation in saying that in this case it would be inequitable to apply the Massachusetts 4% rule to determine the value of the Government's use during the 67 days preceding August 2, 1944. Literally, Mass.G.L. (Ter.Ed.) c. 79, § 37, does not apply. That section sets the rate of interest only for a period following the date as of which damages are assessed, not for a period preceding that date. That is, it does not apply to a period of possession in advance of a declaration of taking under the 1931 Act, whatever may be the situation where the period of possession is before a taking under the 1888 Act. Moreover, the case at bar is more meritorious than the usual case where a claimant asks for more than 4% interest. Here the claimant was renting his property at more than 4% of its value and the Government probably received in rent more than 4% of its value. And in this case the Government ultimately took under the 1931 Act which establishes for comparable situations a rate of 6%.

Yet even the 6% rate applied in other cases seems to me too low in this case. The jury has found $1,500 to be the fair value of the use of the property for the 67 days from May 26 through August 1, 1943. That represents the collective judgment of twelve men. They may well have had that figure in mind when they valued the fee interest in the property at $45,180; and the two appraisals may be interrelated. Moreover, the $1,500 award bears a much closer relation to the evidence than would 6% interest for 67 days on $45,180. During that 67-day period if Steffens had remained in possession Raytheon would have paid him more than $1,000 for the part of the premises it leased, and Steffens would have made additional remunerative use of the part of the premises he retained. It is a fair inference that during that same period the Government actually collected from Raytheon more than $1,000 rent.

In answer to these considerations it cannot justly be said that the fairest way to treat Steffens is as though the Government had filed on May 26, 1943 a declaration of taking, not a petition for condemnation, and to give him 6%. I pass the point that the two procedures may create different responses in an owner. Where an owner's property is subjected to a declaration of taking under the 1931 Act he knows the Government has made a firm commitment; where it is subjected to a petition for condemnation under the 1888 Act he knows the Government is free to abandon the property. What is more important is that in other parts of this case the rights of the parties have been adjudicated on the strict technical basis that the taking occurred by a declaration filed August 2, 1943 and not by a petition or declaration filed May 26, 1943. When the question was whether the Government should pay for the cubicles, the issue was settled not by supposing that a declaration had been filed on May 26, 1943, but by noting that the declaration was not filed until August 2, 1943. When the question is how to compensate Steffens for the 67 days' use of the premises, the issue should be settled by a parallel observance of the actual, and not some hypothetical, facts.

Nor is the fact that Steffens continued to occupy a part of the premises until about July 1, 1943 a reason not to give him $1,500. This fact, together with the fact that during all the 67 days the Government occupied part of the premises, and the further fact that during at least a month the Government occupied all of the premises was before the jury when it fixed the figure at $1,500.

■ I therefore allow as of August 2, 1943, $1,500 for the use and occupancy by the Government of 29–41 Chapel Street, Newton from May 26 through August 1, 1943. This $1,500 does not include interest, as the jury was directed to ignore that factor (R. 489). Yet the $1,500 should carry interest beginning August 2, 1943. Compare Seaboard Air Line Ry. v. United States, 261 U.S. 299, 306, 43 S.Ct. 354, 67 L.Ed. 664. The rate of interest on the $1,500 from August 2, 1943 until the day of judgment should be 4%. Mass.G.L. (Ter. Ed.) c. 79, § 37. Even if as I have indicated

above that Massachusetts statute is not always appropriate for estimating the value of an advance occupation of land, it is an appropriate, and so far as I know the only appropriate, standard for determining the loss suffered by a claimant in not getting his monetary award on the day as of which it was computed.

 Compensation for the second period, that is from August 2, 1944, until the date judgment shall be entered, is governed by Section 1 of The Declaration of Taking Act of 1931, 40 U.S.C.A. § 258a. "The said judgment shall include, as part of the just compensation awarded, interest at the rate of 6 per centum per annum on [$45,180] the amount finally awarded as the value of the property as of the date of taking [August 2, 1943], from said date to the date of payment; but interest shall not be allowed on so much thereof [that is, $30,800] as shall have been paid into the court."

The parties are directed to compute compensation upon the basis stated in this opinion and to submit a form of judgment at the earliest practical date, in no event later than December 1, 1944.